LEITENSDORFER, APPELLANT, vs. DELPHY, RESPONDENT.

1. It is the province of a court to enforce the contracts and conveyances of the parties, and not to make or alter them; and when, by mistake, the contract is not expressed in such

Leitensdorfer vs. Delphy.

terms as to have the force and effect the parties intended, it is the duty of the court to correct the mistake.

2. It is not necessary, in order to establish a mistake in an instrument, to show that particular words were agreed upon to be inserted; it is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed, is insufficient to effectuate their intention.

3. The power of a court of equity to reform an instrument, which, by reason of a mistake, fails to execute the intention of the parties, is unquestionable. It is not material whether the instrument is an executory or an executed agreement; nor is it material whether the proceeding is directly, by bill, to correct the mistake, or the mistake is set up in the answer, by way of defence.

4. Although it is said, that the evidence required to prove a mistake, when it is denied, must be as satisfactory as if the mistake were admitted, yet, this, and similar remarks of judges, however distinguished, form no rule of law, to direct courts in dispensing justice. When the mind of a judge is entirely convinced, upon any disputed question, of fact or law, he is bound to act upon the conviction.

5. It has been so long settled, and so often acted upon that the word "heirs" is necessary to pass a fee simple, that it would be improper to allow it now to be disturbed.

## APPEAL from St. Louis Court of Common Pleas.

### STATEMENT OF THE CASE.

This is an appeal from the St. Louis court of common pleas. The action was originally for the recovery of a piece of land in Carondelet. Both parties claimed under Francis Fournier. On the 16th of January, 1830, he, together with his wife, conveyed the land in question together with the real estate to F. Denoyer, using in the deed the following granting words: "Do grant, bargain, sell and convey unto the said Francis Denoyer, his heirs and assigns, all their right, title, interest, &c." It was declared that the consideration of the deed was, that Denoyer should "maintain Fournier and his wife, during their natural lives, with good and sufficient clothing and food, in sickness and in health; furnish them with a horse and cart and give them at all times free access to the property conveyed for their own use during their lives," during which time Denoyer was not to convey or dispose the land to any person whomsoever.

On the 31st day of January, 1831, Denoyer by a deed, reciting the above-mentioned deed, and that the parties found said deed and the covenants therein contained, to operate to their prejudice and against their interest, went on to declare that these and divers other good causes moved the parties to make the deed of January 1831, by which he did "abandon, relinquish and quit claim to all the property in the aforesaid deed described, unto the said Francis Fournier, and they, the said Francis Fournier and wife, "do hereby release and discharge the said Francis Denoyer from the further performance of each and every one of the covenants by him entered into in the aforesaid deed." These deeds were part of plaintiff's petition.

Both Fournier and his wife died between 1833 and 1840.

On the 20th August, 1850, Denoyer and wife conveyed to the plaintiff the lot in controversy. The petition alleged that defendant was in possession and that the yearly value was $60 00, and prayed judgment, &c.

Leitensdorfer vs. Delphy.

The defendant answered, setting up the deed recited in plaintiff's petition and arguing on them; and averred that if the words "his heirs," were necessary in the deed from Denoyer to Fournier, to convey to the latter any greater estate than for his life, "they were omitted by the ignorance or oversight of the scrivener who wrote the deed, and it was the intention of the parties that Fournier should have his former estate complete to him and his heirs. I had on the 3d day of February, 1831, Fournier conveyed to Denoyer, in fee simple, with covenants for title, part of the land relinquished to him on 31 June, '31" by reason whereof the said Denoyer, or those claiming under him, are estopped in equity from saying that the said Founier had not title in fee simple to all the lands described in the first mentioned deed, and the said Denoyer, and those claiming under him, are in equity estopped from setting up any title under the deed in plaintiff's petition described." Defendant further stated that since 31 June, 1831, and up to the commencement of this suit, Denoyer resided in Carondelet and neither he nor any one claiming under him had set up any claim to the land.

Defendant then deduced title to himself from Fournier the first deed being dated in 1833 and avowed his possession of the lot by virtue of this title.

At the trial the case was submitted to the court sitting as a jury. Plaintiff read his petition and exhibits and rested. Whereupon the defendant read his answers and exhibits and produced the following witnesses, viz: Robert Marechal, Chartrand, Ginon, Gamache, and Chattillon. Robert testified that he had known Fournier—could'nt say how long he had been dead. Denoyer was a son-in-law of Fournier. Fournier lived where defendant now lives; he lived there for a longer time than witness can remember. He was living there in 1830 and before. Witness did not know where Denoyer lived then. Before the change of government Claude Arman lived on part of the block in dispute, and on that part of it occupied by defendant.

Marechal testified that he was more than sixty years old and had known Fournier & Denoyer but did not know Tinon. Fournier lived on the lot in dispute from 1814 until he died, which was fifteen or sixteen years ago. Denoyer had some property and in 1830 lived on a lot near Chouquetts on the hill. After old Fournier's death Mad. Fournier lived with Denoyer, can't say whether he supported her or not. Denoyer worked for his own living. Some part of the time she lived with another son-in-law named Lemai.

Chartrand testified that he knew Claide Pinon as far back as he could remember anything. He lived for five or six years on the south-east quarter of the block (which is the same which is now in dispute.) He then moved to Mr. Menaid's and afterwards moved to Cahokia. This was under the Spanish Government. Witness knew Fournier until his death. Witness cannot say whether Fournier or Denoyer could read or write. Believes that Stine, or else Bavida used to write deeds for the people in Carondelet.

Ginon testified that Denoyer had told him that he bought the land from Fournier and was to support him, but afterwards rued the bargain, and that Fournier gave him part of the lot, and a piece of land in the fields. On cross examination he stated that he got this information from Denoyer and others.

Gamache knew Clande Tinon. He lived on the east quarter of the block; about the middle of the south-east quarter. This was fully thirty-five years ago. Witness went to school to Tinon. He was then twelve years old. He is now fifty-four years old. Afterwards Fournier lived there. If Denoyer ever said any thing to witness respecting his bargain with Fournier witness has forgotten it. The present value of the improvement on the lot is about $2000.

Chatillon testified that he was forty-three years old. That he knew Fournier & Denoyer. They lived on the lot now occupied by defendant. Witness lived in the neighborhood. The contract between Fournier & Denoyer was that Denoyer should support Fournier and have all his property at his death. Witness was present at the execution of the deed of 1830, i. e., the first deed from Fournier to Denoyer. Was not present at the execution of the second deed. Saw no paper when they broke the bargain. Fournier continued to live on the land.

Leitensdorfer vs. Delphy.

Denoyer lived near Chouquetts. Fournier died on the lot in dispute. The present yearly value of the lot in controversy is about two hundred dollars.

This was all the testimony in the cause. The plaintiff throughout objected to the testimony of the witnesses examined as incompetent and irrelevate under the issue joined; and incompetent to vary and contradict the deeds adduced. But the court overruled the objection and the plaintiff excepted.

The court sitting as jury found the following facts: 1st. That it was the intention of the parties to the deed dated 31st January, 1831, that Fournier should, by said deed, have again his former estate in the premises, complete to him and his heirs.

2. That the words of limitation in said deed were omitted by accident, mistake, or unskilfulness of the scrivener. That Denoyer did not perform his covenants in the deed:dated January 16, 1830; that after Fournier executed the deed to Le Blond he remained in possession of the premises under a parol agreement with Le Blond. That Fournier died in 1834, and his wife 10 or 12 years ago. That after Fournier's death, Le Blond claiming a fee in said land made valuable improvements on said land, and that Madame Fournier made an abandonment of the lot to Le Blond in 1834. That Denoyer after the execution of the deed of January 31, 1831, disclaimed all title in the premises. That Denoyer resided in the neighborhood and knew that Fournier was in possession and had conveyed to Le Blond and that Le Blond was making improvements claiming an estate in fee simple. That Denoyer knew of the various transfers of possession to the different quarters named in the mesne conveyance from Le Blond to defendant's wife. That after January 31, 1831, and before his deed to the plaintiff Denoyer never set up any claim to the premises, and never made any objection to the improvement. That Denoyer resided in the neighborhood of the premises from 1830 to 1850. That the defendant is in possession of the premises as husband to Mary Ann Delphy, formerly Mary Ann Bonvier; that Denoyer knew that the premises were in the adverse possession of Le Blond, and those claiming under him from the death of Fournier in 1834 to the date of the deed to the plaintiff in 1850, That Fournier and wife and also Denoyer and wife could neither read nor write. That the various deeds offered in evidence were duly executed by the parties whose names purport to be assigned to them.

It was admitted that whatever title Le Blond acquired under the deed to him, dated December 9th, 1833 is now in defendant's wife.

The court upon the fact in this case declares the law to be as follows: That the omission of words of limitation in a deed through accident mistake or unskilfulness of a scrivener may be supplied in equity, and the fact of such omission is a good defence in equity between parties and privies.

That by the facts found in this cause, and by the recital in the deed of Denoyer and wife to plaintiff, under which plaintiff claims possession of the premises in question, and by the recitals in the deed to which plaintiff's deed refers, the plaintiff is charged with notice of defendant's title and estopped from denying said title. That parol testimony is competent to shew a mistake or accident in drawing up a deed.

Hereupon the court gave judgment for the defendant, and the plaintiff immediately filed the following motions and reasons for a new trial:

"The plaintiff prays the court to set aside the verdict and declaration of law given by it in this case, and grant a rehearing thereof for the following reasons:

1st. Because there is no priority between Denoyer and Leitensdorfer touching the consideration of the deed from Denoyer to Fournier, executed in 1831.

2. Because the deed conveys to Fournier only a life estate in the premises, and Leitensdorfer is a purchaser of the revertion (which had come in possession) for value and without notice.

3. There is no evidence of the omission of the word "heirs" by mistake or unskilfulness of the scrivener who drafted the deed.

4. There is no evidence of the intention of the parties to insert the word "heirs" in deed of 1831.

Leitensdorfer vs. Delphy.

5. Equity cannot supply the want of words of limitation in an instrument conveying lands, in a collateral action.

6. In a case of this kind equity follows the law, and does not and cannot enlarge the estate conveyed, even though the intention of the parties appears on the face of the instrument, and is inferable from its tenor. But

7. In this case there is no such intention apparant.

8. That the verdict is against evidence.

9. That the law is incorrectly declared by the court in the following particulars, viz: In declaring,

1. That the plaintiff is estopped by the recital in the deed from Denoyer to Fournier in 1831.

2. That the omission of words of limitation in a deed through the unskilfulness of the parties or their agent can be supplied in equity.

3. That evidence of such omission can be general when the deed is impeached collaterally.

10. Because upon the record and evidence in this cause, judgment should have been given for the plaintiff.

This motion was overruled; plaintiff excepted and appealed to this court.

## GANTT, for appellant.

I. That the court below, in assuming to find facts entirely disregarded the evidence : and that from an examination of the record it will appear that, in the first place,

There was no evidence showing or tending to show, *who* drafted the deed dated 31st January, 1831.

There was no evidence showing or tending to show that it was the intention of the parties to insert in said deed the word "heirs."

In the second place, there was no evidence showing or tending to show that Denoyer did not perform his covenants to Fournier and wife as required by the deed of 16th January, 1830 up to the 31st January, 1831.

There was no evidence whatever tending to show that Denoyer had disclaimed title to the premises unles his forbearance of suit for 13 or 14 years i. e. after the death of Madame Fournier be such evidence. But to construe such forbearance to signify a disclaimer of the title, would be to enact a new stringent and entirely *ex post facto* law of limitation.

There was no evidence that neither Denoyer nor Fournier could read or write unless the statement of Chartrand that "he could not say whether they could or not" be such evidence.

II. The court below assuming to find the facts ascertains that the words of limitation were omited from the deed of January 30, 1831, "by accident, mistake or unskilfulness of the scrivener" and upon this finding the case is made to turn. Now it is submitted that this very phraseology shows that the court had no means of knowing anything on the subject; but was reduced conjecture concerning probabilities. This is enough to overturn the judgment.

III. It is not true as a proposition of law or equity that the court looking at an instrument and conjecturing that the parties meant something which they have not legally signified, can interpolate words which will effectuate the imputed meaning and to make a contract essentially different in its legal import from that which the parties have made. This is not even allowed in the case of Wells, 6 Crine's Dig. 166; 6 Maddox R. 216.

IV. Words having a peculiar legal significance cannot be supplied to a contract in equity merely because they are necessary to give effect to an intent which, without them, the contract would not bear. There must have been a clear definite purpose to incorporate the supposed words in the contract and the omission to incorporate them must have resulted through first, fraud, or second, accident or mistake, in order that the court of equity should have any

jurisdiction to reform the contract. 1 Pet. S. C. R. 13 to 17; 26 Wendall, 186, Marvin vs. Bennett.

V. Though it be made to appear, however clearly, that the parties were ignorant, yet no pretence can be raised on this account, to alter contracts by them made. 1 Story's Equity 123, 124 and following, and cases there cited.

VI. The enquiry which the court assumed to make respecting this deed cannot be made, when a deed is attacked collaterally, which was the case here. 9 Cowen 766.

VII Both at law and in equity the word "heirs" before the statute of 1835, was, in a deed, indespensable to the creation of an estate in fee simple. In this case equity follows the law. 4 Crinse's Dig. J. 96; Mullanphy vs. Peterson, 1 Mo. R. 758; Hogan's heirs vs. Welcker, & Middlebaugh. (not published.)

VIII It is too late after the lapse of 19 years and upwards to set up a mistake of the parties as the ground of reforming an instrument.

IX. There was not in the answer of the defendant any allegation that the parties to the deed of Jan. 30, 1831, intended to insert the word "heirs" in that deed, and therefore any evidence on that subject was inadmissible. 9 Cow. 735, Pattison vs. Hall.

GAMBLE, J., delivered the opinion of the court.

Fournier, an old inhabitant of Carodelet, conveyed all his property, real and personal, to his son-in-law, Denoyer; the only consideration of the conveyance being the covenant of the son-in-law, contained in the same deed, by which he bound himself to maintain his father-in-law and mother-in-law "during their lives, with good and sufficient food and clothing, in sickness and in health; furnish them with a horse and cart, and give them at all times free access to the property conveyed for their own use so long as they might live, and that during that time he would not convey the property to any other person."

A year after this conveyance, the parties executed another instrument, in which they recite the substance of the previous conveyance, and then say, "which said deed and the covenants therein contained, the said parties find to operate to their prejudice and against their interest, in consideration whereof, as well as for divers other good causes them thereunto moving, the said Francis Denoyer, on his part, hereby abandons, relinquishes, and quits claim to all the property in the aforesaid deed described, unto the said Francis Fournier, and the said Francis and Josette his wife do hereby release and discharge the said Denoyer from the further performance of each and every one of the covenants entered into in the aforesaid deed."

The father-in-law, on the next day after this last instrument was executed, conveyed a part of the same property, but not the property now in question, to his son-in-law Denoyer, by deed with general warranty. Fournier, the father-in-law, continued in possession of the premises in

question for some two years, and then sold and conveyed the property, under which conveyance the possession has ever since been held.

The plaintiff claims by deed from Denoyer, the son-in-law, made more than nineteen years after the instrument by which they attempted to rescind the first conveyance; and the whole force of the plaintiff's claim is, that there are no words of inheritance in the reconveyance from Denoyer to Fournier, and therefore Denoyer retained the reversion after a life estate conveyed to Fournier.

It was plainly the intention of the parties, when the first deed was executed, that the use of the property should be enjoyed by both Fournier and his wife, during their lives, for so is the covenant of Denoyer in that deed. If the reconveyance, by Denoyer, only vested in Fournier a life estate in the property, it was less than the parties supposed was already in Fournier and his wife, and so, according to this construction of the instrument, Denoyer being entirely discharged from his covenants by plain and effectual words, would get the fee simple in the whole property after the death of Fournier for no consideration whatever. It is the province of a court to enforce the contracts and conveyances of the parties, and not to make or alter them; but it is the duty of the court to enforce the contract which was really made, and when by mistake that contract is not expressed in such terms as to have the force and effect that the parties intended it should have, then it is the clear duty of the court to correct the mistake in the instrument. The supreme court of the United States in Hunt vs. Rousmaniere's adm'r, 1 Peters 13 say, "there are certain principles of equity applicable to this question, which as general principles we hold to be incontrovertible. The first is, that where an instrument is drawn and executed, which professes or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which by mistake of the draftsman, either as to fact or law, does not fulfil or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement."

In the present case, there is no necessity for going out of the instrument executed between these parties, in order to ascertain their intention, in making the second conveyance and the agreement between them which the instrument was designed to execute. They refer to the first conveyance and recite its provisions. It had two parts—the first, the conveyance to Denoyer of all Fournier's property—the second, the covenants of Denoyer to support Fournier and wife, &c. They say in the second instrument as the consideration upon which it was made that

the previous "deed and the covenants therein contained, the parties found to operate to their prejudice and against their interests," therefore they execute the second. This second instrument relinquishes and quits claim to Fournier all the property, and releases Denoyer from all his covenants. The first deed, as a conveyance of property, could not operate to the prejudice or against the interests of Fournier; nor did the covenants of Denoyer operate to the prejudice or against the interests of Fournier. But the deed, as a conveyance, operated to the prejudice of Fournier, and the covenants to the prejudice of Denoyer. It is perfectly apparent that the parties had agreed, in order to free themselves from this mutually prejudice, to rescind the instrument which thus injuriously affected the interests of each, and if the terms employed in the second instrument have not the effect of re-instating them in all their former rights, and freeing them from all the burdens imposed by the first, it does not fulfil their intention, because of a mistake in drawing it.

If words of inheritance were necessary in order to re-invest Fournier with the fee simple of the land which had been conveyed to Denoyer, then such words were omitted by mistake. It is not necessary, in order to establish a mistake in an instrument that it shall be shown that particular words were agreed upon by the parties as words to be inserted in the instrument. It is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention.

The power of a court of equity to reform an instrument, which by reason of a mistake fails to execute the intention of the parties is unquestionable. It is not material, whether the instrument is an executory or an executed agreement; nor is it material whether the proceeding is directly by bill to correct the mistake or the mistake is set up in the answer by way of defence. 2 John. R. 585; 5 John. C. R. 224; ib. 184; 10 Conn. 244; 1 John. C. R. 607; 6 Blackf. 448, 1 Dev. Eq. Reports 379.

Although it is said, that the evidence required to prove a mistake when it is denied must be as satisfactorily as if the mistake were admitted, yet this and similar remarks of judges, however distinguished form no rule of law to direct courts in dispensing justice. When the mind of a judge is entirely convinced upon any disputed question, whether of fact or law, he is bound to act upon the conviction.

In the present case the evidence is stronger than the testimony of witnesses. It is the language of the parties themselves, in the very instruments executed, and in which the mistake is alleged to exist.

It is to be observed, that the question, whether the word "heirs" is necessary to pass a fee simple is not discussed. It has been so long settled and so often acted upon, that it would be improper to allow it now to be disturbed. Taking that part of the common law to be in force in this State, we do not think that any of the authorities cited by the defendant's counsel, bring this case within any exception to the rule requiring words of inheritance in order to the transmission of a fee. Let the judgment be affirmed.