DENNIS KANAN, Appellant, v. ESTELLA HOGAN
et al.

Division One, March 16, 1925.

1. **REFORMATION OF DEED: Mutual Mistake: Proof.** A written instrument will be reformed in equity to conform to the agreement and understanding of the interested parties, if a mutual mistake has been made in drawing it; and a mistake of the scrivener is a mutual mistake of the parties to a deed if he acts as the agent of both in drawing it. But the proof of mutual mistake must be cogent and convincing, but proof beyond a reasonable doubt is not required.

2. ———: ———: **Sufficient Proof.** Positive and specific testimony by the scrivener that the deceased wife, in whom was the title to lots, told him that she wanted the deed so drawn that she would retain a life estate therein and the fee would be vested in remainder in her husband, the grantee; that the scrivener was the agent of the wife; that he delivered the deed to the grantee, with her knowledge and consent; and other testimony tending to show that the scrivener was the agent of both parties; that there was no talk of a will; that the lots had been paid for by the husband's money, and deeded to her; and that the wife had stated that the reason she

made the deed was that her husband's money had paid for the lots and he had agreed to take care of her daughter by a former marriage until she was married, is sufficient evidence to establish a mutual mistake, where the deed attempted to convey the property absolutely to the husband, to take effect upon the wife's death.

3. ———: ———: Instrument Neither Deed Nor Will: Void. An instrument, purporting to be a conveyance "to take effect at and after the death" of the grantor, is not a deed, because it vests no present estate in the.grantee, and is not a will, because not formally executed as such. But where it is clear that it was the intention of the parties to execute a deed by which a life estate would be reserved to the grantor and the fee in remainder would be conveyed to the grantee, the instrument will be reformed, in a direct proceeding in a court of equity brought for that purpose, so as to conform to the clearly proved intention of the parties.

4. ———: ———: Ignorance of Scrivener: Mixed Mistake of Fact and Law. Where the parties clearly intended that their executed written instrument should reserve a life estate in the grantor and grant the fee in remainder to the grantee, and both participated in the execution of an instrument which is ineffective to convey any estate to the grantee, their mistake was a mixed mistake of law and fact, and being mutual, the instrument will not be held to be void, but equity will reform it into a deed conforming to their intention, although the failure of the instrument to express their intention may have resulted from a mistake on their part in understanding the legal meaning and operation of the words employed in the writing, or from a mistake on the part of the ignorant scrivener in using words that did not express their intention. The ignorance of the scrivener, if he is the agent of both parties, creates a condition in which is a mixed mistake of law and fact, and such a mistake is subject to correction in equity.

---

Citations to Headnotes: 1, 2 and 4, Reformation of Instruments, 34 Cyc. 908, 910, 915, 984, 986, 914, 915; 3, Wills, 40 Cyc. 923, 939, 1088.

Appeal from Clinton Circuit Court.—*Hon. Guy B. Park,* Judge.

REVERSED AND REMANDED *(with directions).*

*Frank B. Klepper* and *R. H. Musser* for appellant.

The court erred in its ruling that the deed in controversy was null and void and could not be reformed. The term void is perhaps seldom, unless in a very clear case, to be regarded as implying a complete nullity, but is in a legal sense subject to large qualifications, in view of all the circumstances calling for its application and the rights and interests to be affected in a given case. Brown v. Brown, 50 N. H. 552; Kearney v. Brown, 50 Mo. 287; Soeker v. Kerr, 202 Mo. App. 27. "Void" in one recognizable use, does not signify that it is void in such a sense that it cannot be rendered valid, but merely that it is void unless and until it shall be rendered valid by some event or act. 8 Words & Phrases, Title "Void," pp. 7332 to 7335; Pheimer v. Union Depot, 31 Minn. 289; Words & Phrases (2 Ser.) "Void," p. 1191; Nolen v. Henry, 190 Ala. 540. (a) Under the evidence in this case, the court erred in not promptly exercising the power vested in a court of equity and granting the relief. (b) Evidence of "Mistake of fact" is shown by the instrument itself, in that it contains words and an effect that the parties did not intend to incorporate therein. 2 Encyclopedia of Evidence, pp. 40, 47, 65, 86; Pitman v. Hennesey, 48 N. Y. 415; Marks v. Taylor, 23 Mich. 152; Williamson v. Brown, 195 Mo. 329; Corrigan v. Tiernay, 100 Mo. 280; Maze v. Boehm, 281 \ Mo. 512; Dougherty v. Dougherty, 204 Mo. 237. (c) Whenever there has been a material omission or mistake in the deed, so that it fails to express what the parties intended, a court of equity may reform and correct it in accordance with the transaction as it was actually agreed upon, and reformation will be allowed. 34 Cyc. 910, 911; 5 Thompson on Real Property, sec. 4421, p. 535; 4 Thompson on Real Property, sec. 3353, p. 465; 5 Wigmore on Evidence, pp. 278-286; 1 Story on Contracts (14 Ed.) sec. 29, note; Horine v. Ins. Co., 201 S. W. 959; Peterson v. Casualty Co., 249 S. W. 150; Partridge v. Partridge, 220 Mo. 325; Cramp v. United States, 239 U. S. 221; Barnes v. Peterman, 136 Ga. 264; Baird v. Railroad, 210 N. Y. 225; Whittaker v. Lewis, 264 Mo. 215; McIntyre v. Casey, 182 S.

W. 966.    (d)    Deeds may be reformed in equity for fraud or mutual mistake, so as to affect the intention of the parties, and this may be done upon parol evidence, and reformation is not confined, because of mistakes, to any one class of instruments, but applies to deeds equally with other instruments.    Williams v. Hamilton, 65 Am. St. 507; Pinkham v. Pinkham, 60 Neb. 600; Hansbrandt v. Hoffer, 117 Iowa, 103; Corrigan v. Tierney, 100 Mo. 280.    (e)    Where a mistake has been made by a draftsman in the preparation of a deed, a court of equity will afford relief by directing a reformation of the deed, so as to carry out the intention of the parties when the deed was written.    Lasmaster v. Morgan, 200 S. W. 32.

*Elton T. Harris* and *E. G. Robison* for respondents.

The defendants contend that the judgment of the trial court is correct, and should be 'sustained on the following grounds:    (1)    That the purported conveyance from Amanda Kanan to Dennis Kanan is absolutely void.    (2)    That a void instrument cannot be reformed; that a nullity is incapable of reformation, confirmation or ratification.    (3)    That the evidence shows that the consideration for the purported conveyance is a gift, that the grantee is merely the donee of the donor, and that in such a case an instrument cannot be reformed as against the donor or her successors, in this case her children.    (4)    That the evidence does not show a mutual mistake or resulting trust, but a mistake as to the legal effect of the deed.    (5)    The purported conveyance is testamentary in character and passes no title to the grantee. It is the same as a will with one attesting witness, i. e., lacks the formal legal requisites necessary to make it a will, and is void.    Terry v. Glover, 235 Mo. 547; Givens v. Ott, 222 Mo. 411; Aldridge v. Aldridge, 202 Mo. 575; Murphy v. Gabbert, 166 Mo. 602; Goodale v. Evans, 263 Mo. 231; Hohenstreet v. Segelhorst, 227 S. W. 83.    (6)    A void agreement has no standing and cannot be reformed.    Ainsworth v. Morrill, 160 Pac. 1089. Equity will not reform a void instrument.    Cleveland

v. Bateman, 158 Pac. 648.  The doctrine of reforming instruments is not applicable to one which is void on its face.  Evarts v. Steger, 6 Ore. 55; Griffin v. McIntosh, 176 Mo. 398.  (7)  The mistake, if one was made in preparing the deed, was a mistake as to the legal effect of the deed, and equity cannot reform a deed under such conditions.  Griffin v. Miller, 188 Mo. 327; Parker v. Vanhoozer, 142 Mo. 621; Tesson v. Ins. Co., 40 Mo. 33; Norton v. Highleyman, 88 Mo. 621.

GRAVES, J.—The petition is in two counts.  The first asks for the reformation of a deed made by Amanda Kanan to her husband, Dennis Kanan, purporting to convey some three city lots in the city of Cameron, Missouri, which property had for years been the home of the grantor and grantee.  It is averred that the deed was made for the purpose of retaining in the wife a life estate, and then conveying the remainder in fee to the husband, the said property, as alleged, being paid for by funds turned over to the wife by the husband.  The vital averment is that the scrivener, selected by the husband and wife, did  not draw the deed in accordance with the expressed desires and directions of the wife and the understanding of the parties.  It is charged that the scrivener was ignorant about the form of deeds, and that he made a mistake in the use of certain language therein.  The deed is short (evidently an Iowa form being used, as the deed was executed in Iowa before a notary public in said state), and we quote it thus:

"Quit Claim Deed.
"Know all Men by These Presents:
    "That I, Amanda Kanan, wife of Dennis Kanan, of the County of Appanoose and State of Iowa, in consideration of the Love I have for him, and the Sum of One Dollar, in hand paid by Dennis Kanan, of the County of Appanoose and State of Iowa, do hereby Remise, Release and Quit Claim unto the said Dennis Kanan, her Husband, all the right, title and interest in and to the following described premises, with all appurtenances thereunto belonging, situated in the County of Appanoose, and State of Iowa, to-wit: All the Lots Thirty one (31), Thirty two (32), and Thirty three (33), in

Giauque in Addition to the City of Cameron in the County of Clinton, State of Missouri, *this to take effect at and after My Death.*

"And the said Amanda Kanan hereby relinquishes her right of dower in and to the foregoing described premises.

"Signed this 12th day of October, A. D. 1916.

"AMANDA KANAN.

"In Presence of:
   Mrs. R. K. Hockett.
   Cecil Wright."

We omit the notary's acknowledgment for brevity of statement.

The italicized words are.the ones said to have been put in the deed contrary to the directions given to the notary. This count of the petition also avers that the deed contemplated by the parties was one based upon a valuable consideration and pursuant to agreement of the parties. Such portion of the petition, after describing the property reads:

"And that the said deed was made for a good and valuable consideration, namely, to repay this plaintiff the purchase price of the said property, the same having been paid for by him, and the legal title thereto having been placed in the said Amanda Kanan's name, and the further consideration of the plaintiff having furnished a home for and his agreement to continue to furnish a home for Cecil Wright, now Cecil Lawler, and defendant above, until the said Cecil Wright married or provided herself a home.

"That it was further understood and agreed between the said parties that the said Amanda Kanan should convey to the plaintiff the further estate in said lands, reserving to herself an estate for life therein, the fee simple title thereafter or remainder over to be conveyed absolutely to this plaintiff."

The second count is one to ascertain and determine title, but such count is not exactly in the usual form of action brought under our statute. It is, however, sufficiently in such form as to be denominated a statutory action to ascertain and determine title.

The several answers place in issue the averments of both counts of the petition, and at least one of them

raises other matters which will be noted, if required. We find no reply noted in the record, but this is immaterial, as the trial proceeded as if one had been filed. The trial court dismissed the petition of plaintiff, and entered a judgment for costs against him. From such judgment plaintiff appealed.

The defendant John Wright took a different course from the other defendants, according to respondents' additional abstract. He moved to strike out the first amended petition of the plaintiff, which motion the court overruled, and the said John Wright saved an exception to such ruling, elected to stand upon his motion, and refused to plead further. Judgment by default went against him. There is a companion case, in which John Wright is the appellant, and further notice of his contention will be noted in that case. This outlines the pleadings and the judgment. Other matters are left to the opinion.

I.   The law is well settled that a written instrument will be reformed in equity to conform to the agreement and understanding of the interested parties, if there has been a mutual mistake made in drawing the instrument. [Dougherty v. Dougherty, 204 Mo. 228; Maze v. Boehm, 281 Mo. 507.]

Mutual Mistake.

The mistake of the scrivener is a mutual mistake as between the parties, when and where he acts as the agents of both parties in the preparation of the deed or written instrument. [See Dougherty case, supra, and cases therein cited.] The proof of the mutual mistake must be cogent and convincing (Dougherty v. Dougherty, supra) but proof beyond a reasonable doubt is not required. [Maze v. Boehm, supra.]

There are really but three questions under the first count of the petition, i. e.: (1) does the proof as to mutual mistake measure up to the rule announced in the two cases, supra; (2) whether or not the deed is void, and (3) whether or not such instrument can be reformed. The trial court excluded the deed from evidence upon the grounds that it was absolutely void, and could not be reformed. Of these questions in order.

II.. We think the evidence shows a mutual mistake. The notary swears very specifically to what Mrs. Kanan told as to how she wanted the deed written. There is evidence tending to show that the notary was the agent of both parties. There is no question as to the notary's agency as to the wife, and Leo O. Kanan, a step-son, who had divers talks with the grantor, shows an admission upon her part to the effect that the father, Dennis Kanan, engaged the notary to write the deed, and other evidence shows that he (the notary) took the deed (alleged deed) and delivered it to the grantee, with the knowledge and consent of the grantor. All the talk was about making a deed. Nothing was said as to a will. This appears from all the witnesses. In addition, this same step-son testified to an admission from the grantor that the reason the grantor made the instrument was because the property was paid for by the husband's money, and that the grantee was to care for Cecil Wright, a step-daughter of the grantor, then in his family for years, until she got married. There was three sets of children. When Kanan and Mrs. Kanan were married both he and she had children by a former marriage. All were members of the household, as well as were two others born of their marriage. Cecil Wright (now Cecil Lawler) was the youngest of the children brought to the home by the wife. Kanan kept her in the home until 1920 (three years after the mother's death), at which time she married and went to herself. So, the testimony of the notary clearly shows that, through his ignorance, a mistake was made, and further evidence detailed above makes his act the mutual mistake of grantor and grantee. This further evidence tends to show a previous agreement under which there was not only a valuable consideration for the alleged deed (taking care of Cecil until she married), but a good reason for the act of making the instrument, in that the property was paid for out of the husband's pay-checks, he being a railroad employee of a higher grade. His pay checks were turned over to the wife. There is therefore

*Sufficient Proof.*

sufficient clear and cogent evidence upon which to re-form the instrument, if under the law it can be reformed.

III.   There can be no question as to the fact that the instrument is not effective as a conveyance. It is

**Neither Deed Nor Will.** neither a deed nor a will. It is further clear that the purpose was to make a deed by the terms of which the wife should retain a life estate, and the husband take the remainder in fee. The notary says he thought he had prepared such a document, and so told the wife. A lawyer had been consulted as to how the conveyance should be worded to accomplish the purpose, and he advised a deed to the husband, reserving therein a life estate to the wife. There is no question that this was the understanding of the parties, from admissions of the grantor, the grantees lips being sealed by the death of the grantor.

In a collateral proceeding, if this paper writing were offered in evidence, it would be rejected as evidence of title. But that is not this case. We have here a direct proceeding in equity to reform a written instrument intended to be a deed, but which is not a deed by reason of the mutual mistake of the parties. This we say, because the notary was the agent of both parties, and the notary made the mistake, which precludes the written instrument from being evidence of title to real estate. There are two mistakes apparent from the face of this written instrument and from the proof, (1) in one place it says the property is in Appanoose County, Iowa, but later describes the property specifically, thus, "All the lots Thirty-one (31), Thirty-two (32) and Thirty-three (33) in Giauque in Addition to the City of Cameron in the County of Clinton, State of Missouri," and (2) in the words added after the specific description, supra, i. e. "this to take effect at and after my death."

These words render the written instrument ineffective as a deed, but if they were put there through mistake, as we have ruled, can a court of equity reform the written instrument to conform to the contract and the intent of the parties? This is the vital question, and of this in the following paragraphs.

IV. We have said, supra, that the written instrument, supra, is not effective as a deed because it, by the wording thereof, created no present estate in the grantee. Further, that it is insufficient as a will, because not formally executed as such. Then it might be further said that there was no intention upon the part of the grantor to make a will. Nor did the grantee expect such an instrument. There are sufficient facts from the admissions of the grantor and other facts in evidence that she was to make a deed to her husband in view of the consideration we have mentioned, i. e. that the husband was to make a home for Cecil Wright (her daughter by a former marriage) until Cecil was married. It is evident that both parties so understood the contract or agreement, and that Dennis Kanan thought he was carrying out the agreement when in fact he did make a home for Cecil for three years.

*Mixed Mistake of Law and Fact.*

Respondents emphasize the contention that we have before us a void instrument, and that a void instrument cannot be reformed. They also emphasize the two cases of Goodale v. Evans, 263 Mo. 231, and Hohenstreet v. Segelhorst, 227 S. W. 1. c. 83. This because the word *void* has been used. These cases, and others cited, use the word void, in the sense that the instruments therein considered were not effective as a conveyance, either as a deed or as a will. No case is cited where it is said that words mistakenly used by an ignorant scrivener (agent of both parties, for Dennis Kanan both sent for and paid the scrivener), which words were not contemplated by the agreement of the parties, and which words rendered ineffective the instrument as a conveyance, cannot be corrected in equity. They cite cases where reformation has been asked and refused, but they are cases where this court held that the measure of proof was not sufficient to meet the rigid rule in such cases. Examples are Parker v. Vanhoozer, 142 Mo. 621, and Griffin v. Miller, 188 Mo. 327.

In many cases the rule is announced to the effect that, "The mistake of the scrivener, although it be a mis-

take of law, in drawing up an instrument, whereby he fails to carry out the previous agreement of the parties, may be corrected.'' [34 Cyc. pp. 910 and 915.] The rule in this State is perhaps a little stricter than in some. Thus in Corrigan v. Tiernay, 100 Mo. l. c. 280, BLACK, J., said:

"The point pressed upon our attention is, that, according to the answer, Patrick Tiernay had full knowledge of all of the facts, and the mistake was simply a mistake of law in supposing the deed would convey the title to him and his wife jointly. It is a well-established general rule that a court of equity will not grant relief against a mistake of law unmixed with any mistake of fact. [Price v. Estill, 87 Mo. 378; Norton v. Highleyman, 88 Mo. 621.] There are, however, some exceptions to this general rule. Cases arise where there is a mixed mistake of law and of fact in which relief will be granted. Thus in the case of Griffith v. Townley, 69 Mo. 13, an administrator sold land of his intestate, supposing that it was the fee that he was selling, and the purchaser supposed that it was the fee that he was buying. It transpired that nothing passed by the sale but the equity of redemption. It was held there was such a mutual mistake of fact and law as entitled the purchaser to relief. [See also Cassidy v. Metcalf, 66 Mo. 519.]

"But it is not necessary to a disposition of the case in hand to follow out the many distinctions taken in the class of cases just mentioned. If an agreement is what the parties thereto intended it should be, equity does not interfere because the parties did not understand its legal effect. 'The principle underlying the rule is, says Mr. Pomeroy, 'that equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into the transaction, but which they might or even would have had, if they had been more correctly informed as to the law.' [2 Pom. Eq. Jur., sec. 843.] A different case is presented where the instrument, as it is reduced to writing, fails to express the contract which the parties actually entered into. In such cases equity will reform the contract, and this, too,

though the instrument fails to express the contract which the parties made by reason of a mistake of law. Says the author last named: 'In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing.' [2 Pom. Eq. Jur., sec. 845.]''

The deed was to be one conveying to Tiernay and wife an estate by the entirety. The deed actually conveyed the property to ''Catherine Tiernay, wife of Patrick Tiernay.'' The lower court decreed full title (after the death of Catherine) in Patrick Tiernay, and this court sustained that decree, although it precluded the children of Mrs. Tiernay by a former husband from interest therein.

This case is approved by LAMM, J., in Williamson v. Brown, 195 Mo. l. c. 331, and after quoting therefrom as we have done, supra, he, at page 332, adds:

"Nor is it material whether the instrument sought to be reformed is an executed or executory agreement, nor whether the proceeding to reform is by way of a bill to correct a mistake, or by way of an answer as a defense asking affirmative relief.

"The rule announced by GAMBLE, J., in Leitensdorfer v. Delphy, 15 Mo. l. c. 167, cited by the learned counsel of respondent, is wholesome and to the point, and, therefore, may be attended to with profit, viz.: 'If words of inheritance were necessary in order to reinvest Fournier with the fee simple of the land which had been conveyed to Denoyer, then such words were omitted by mistake. It was not necessary, in order to establish a mistake in an instrument, that it shall be shown that particular words were agreed upon by the parties as words to be inserted in the instrument. It is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention. The

power of a court of equity to reform an instrument, which by reason of a mistake fails to execute the intention of the parties, is unquestionable. It is not material, whether the instrument is an executory or an executed agreement; nor is it material whether the proceeding is directly by will to correct the mistake or the mistake is set up in the answer by way of defense. . . . Although it is said that the evidence required to prove a mistake when it is denied must be as satisfactory as if the mistake were admitted, yet this and similar remarks of judges, however distinguished, form no rule of law to direct courts in dispensing justice. When the mind of a judge is entirely convinced upon any disputed question, whether of fact or law, he is bound to act upon the conviction.'

''Applying the foregoing equitable principles to the facts disclosed by the evidence and found to exist by the chancellor, we are of the opinion, and so hold, that ignorance of the law on the part of the justice of the peace created a condition of things in which there was a *mixed mistake of law and fact,* which, as the justice was the agent of both parties, became a mutual mistake and subject to correction in equity. [Benn v. Pritchett, 163 Mo. 560.] ''

Note the ruling that the ignorance of the scrivener, resulting in the production of a writing which did not express the contract of the parties, makes the question one of mixed law and fact, and if the mistake was mutual (which is true when the scrivener acts for both parties) as here, equity will reform.

In Partridge v. Partridge, 220 Mo. 321, the husband undertook to convey his interest in eighty acres of land, but he did not, through mistake, convey the land which he owned. He misdescribed the land, and our court held that provision for his wife was a meritorious consideration, and reformed the deed in her favor.

Further in the very late case of McVey v. Phillips, 259 S. W. l. c. 1066, James T. Blair, J., said: ''The mistake in this case was not as to collateral matter. It was

in the instrument itself, in the sense that its language did not carry out the substance of the agreement and purpose of the parties. It was not incidental or pertaining to the inducement to the contract, but went to the vitals of the agreement between the grantees. [Clark on Contracts, p. 455, sec. 341; 2 Pomeroy Eq., sec. 856.]''

And further on in the same case (259 S. W. l. c. 1067) he said:

''The real contention of appellant is that the mistake in this case is not such as to let in equity to reform the deed. It is proved that respondent and her son, each of whom contributed to the consideration of the deed, had agreed with each other that they would have the deed to them so drawn as to create in them a joint tenancy. It is clear they sought advice on the proper way to draw the deed, and in directing the scrivener, who confessed to them her ignorance as to the manner of drafting a deed to carry out their purpose, they caused her to use language which, on its face, vested title in them as tenants in common, which thereby defeated their then purpose and failed to carry out the contract they had entered into with each other. The mistake was mutual. The fact that respondent and George W. knew what words were in the deed does not bar recovery in this case, since they were mistaken as to the meaning of those words. The case falls squarely within the rule long in force in this State. This court has often quoted, approved, and applied the following formulation of the principle: 'In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative or defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing. [2 Pomeroy Eq., sec. 845; Corrigan v. Tiernay, 100 Mo. l. c. 281, 13 S. W. 401; Williamson v. Brown, 195 Mo. l. c. 332, 93 S. W. 791; Leitensdorfer v. Delphy, 15 Mo. l. c. 167, 55 Am.

Dec. 137; Bramhall v. Bramhall, 216 S. W. 769; Wilhite v. Wilhite, 284 Mo. l. c. 393, 224 S. W. 448; Horine v. Ins. Co., 199 Mo. App. 107, 201 S. W. 958.]'

"Like decisions in many jurisdictions are collated in a note (to Dolvin v. American Harrow Co., 125 Ga. 699, 54 S. E. 706) in 28 L. R. A. (N. S.) 811 et seq. Under this rule, which now has quite general approval, the court had power to reform the deed involved in this case."

In the McVey case the deed as drawn made the grantee tenants in common while the intent was to have a deed so drawn as to create a joint estate with right of survivorship. The proof showing that such was the understanding and agreement of the parties, the court, under a plea therefor, reformed the instrument so as to have it convey a joint estate rather than one of tenants in common. The action of the trial court was affirmed.

No court in this State, or elsewhere, so far as we can find, has ever ruled that a court of equity will not so reform a written instrument as to make it express the contract or wish of the parties, when by mutual mistake it does not conform to their contract, or to their expressed intent. We do not believe that simply because the instrument, ignorantly drawn by the scrivener, conveys no estate, such instrument cannot be reformed to express the intent of the parties as gathered from the contract or agreement made before the instrument was executed. Cases from other jurisdictions, as stated in the McVey case, will be found collected in note to case of Dolvin v. American Harrow Co., in 28 L. R. A. (N. S.) 811 et seq.

The trial court erred in not decreeing reformation of the deed as prayed by the plaintiff, in the instant case, and in refusing to decree title in him under the second count in the petition. The decree of the lower court is reversed, and the cause remanded with directions to the circuit court to decree reformation as prayed in the first count, and decree title in fee to be in plaintiff under the second count. This applies to all defendants, except

defendant John Wright, who has an appeal here in a companion case. His rights will be determined there. All concur, except *Atwood, J.*, not sitting.