STATE of M'ssouri ex rel. STATE HIGH-
WAY COMMISSION of Missouri,
Appellant,

v.

Leonard SCHWABE et al., on Counterclaim
of Louis M. Noble, Mary L. Noble, and
Exchange National Bank, a Corporation,
Respondents.

No. 47477.

Supreme Court of Missouri,

Division No. 1.

May 9, 1960.

Robert L. Hyder, Minor C. Livesay, Jefferson City, for appellant.

Robert C. Smith, Columbia, Smith & Lewis, Columbia, of counsel, for respondents.

COIL, Commissioner.

Respondents Louis and Mary Noble were defendants in a condemnation proceedings instituted by the State Highway Commission. In Count 2 of their amended counterclaim they sought the reformation of a deed by which they had conveyed real estate to the State of Missouri. The trial chancellor found that the deed in question did not reserve a right of access to Highway 40 but that, as contended by respondents, such reservation had been omitted as a result of mutual mistake, and adjudged that the deed be reformed to include such reservation. The State Highway Commission (hereinafter called commission) has appealed from that judgment.

■ Inasmuch as the title to real estate is directly involved, we have appellate jurisdiction. Dalton v. Johnson, Mo.App., 319 S.W.2d 66; Dalton v. Johnson, Mo., 320 S.W.2d 569, 571.

In 1948 the commission was acquiring right of way in Boone County for new U. S. Highway 40. Respondents Louis Noble and his wife Mary (respondent Exchange National Bank was the holder of notes secured by deeds of trust on the Nobles' property) owned 45 acres on the north side of the proposed east-west highway. The commission wished to acquire 5.9 acres of that property and in the spring of 1948 its employees and agents, T. H. Erwin (head of the right-of-way division in 1948) and Mr. Hoehler (deceased prior to the trial of the present case), began to negotiate with the attorney and agent for Louis and Mary Noble. Those negotiations culminated in a deed dated November 17, 1948, executed by the Nobles to the State of Missouri conveying the 5.9 acres. For purposes pertinent to any question here involved, the deed conveyed a strip of land approximately 1550 feet in length. About 250 feet from

the west end of that strip an existing north-south county road intersected the strip of land, the existing highway, and the proposed new highway.

The present condemnation proceedings was filed January 10, 1958. Its purpose was to acquire additional land for new Highway 40. In the meantime, that is, from the date of the deed, November 1947 until the summer of 1957, the Nobles had used the county road and thereby had enjoyed continuous access to the highway. In the summer of 1957, however, the commission blocked the county road by an embankment apparently at the north edge of the right of way of new Highway 40. In the condemnation petition the commission recited, as to respondents' land, that there was "no right of direct access to land heretofore acquired except as set out in the" deed from respondents to the state. To that petition respondents filed the amended counterclaim heretofore mentioned.

It was and is respondents' contention that the agreement of the parties was that an easement of access was to be reserved in the deed at the place where the county road intersected the existing and proposed highways and that if the deed as written did not express that agreement, it should be reformed to accord therewith.

Appellant adduced no evidence below and contends here that the deed is plain and unambiguous and does not reserve but specifically conveys and relinquishes all rights of access, and that for reasons to which we shall hereinafter refer, respondents were not entitled to have the deed reformed.

Respondents' agent who negotiated for them and who approved the deed for their signatures was an experienced lawyer. He negotiated with Messrs. Erwin and Hoehler during the period from the spring to November of 1948. He testified that when he first examined the property in question he understood that all of his clients' access to Highway 40 was to be cut off and that as a result he consulted with a real estate

agent as to the amount of damages which would accrue based on the loss of all direct access and that the suggested figure was $30,000 (the actual consideration for the deed as finally signed was $5,900); that the commission's agents offered $3,000 for the desired property and pointed out that it was not true, as he thought, that all access would be cut off but, on the contrary, the sale and purchase would be made with the understanding that access would be guaranteed to the new highway at the point where the existing county road intersected it; that the agents repeatedly so stated during the negotiations, and that it was the expressed intent of the commission's agents and himself as agent for the Nobles that the deed was to contain a reservation of a right of access to new Highway 40 at the place where the county road intersected existing Highway 40 as shown on the plat; that the first deed submitted did not make provision for any such reservation and when that was pointed out to agents Hoehler and Erwin they had another deed (the one signed) prepared. Noble's attorney testified further that he was of the view that the new deed was not as clear as it should have been with respect to the right of access but that the commission's agent pointed out that the deed did in fact reserve a right of access at the point mentioned because by its terms the Nobles were not relinquishing any right of way they had by reason of the existence of the county road; that he (the witness) concluded that the deed was so drawn that the Nobles did not relinquish but retained the right of access which they had by reason of the county road; that such was the way the commission's agents and he understood it and that if the language used did not or does not mean that, or is not so construed, then the deed does not represent the agreement of the parties.

Ira McDonald, in the real estate business in Columbia, testified that he was present at some of the negotiations and that at first the commission's agents wished to eliminate all access from Noble's abutting land but later agreed that he would continue to have access through the county road at the place where it intersected the highway and that he heard those agents tell Mr. Noble that he would be able to get on the highway at the place where the county road intersected it.

Respondent Louis Noble testified that commission agent Erwin said his (Noble's) access would be at the point where the county road intersected the existing highway and that Erwin cautioned him that if he sold any lots from his property in the future the purchasers would have no access to the highway other than by the county road; that he, Noble, executed the deed and determined to accept $5,900 for the property based on the understanding that he would have access at only one place, viz., where the county road intersected, and that otherwise he and his wife would not have signed the deed. Noble testified further that he had continued to use the county road and thereby had had access to the highway for about ten years following the execution of the deed, during which time no one from the commission had ever attempted to interfere with his access; that he first learned that the commission claimed that he had no such access but had conveyed it by his deed, in the early summer of 1957 when the county road was blocked by a 20-foot high embankment and his access to the highway thereby cut off.

T. H. Erwin, undisputedly the agent of the commission for the purpose of acquiring the right of way in question in 1948, testified that the testimony given by Noble's attorney at the trial of the present case was substantially correct as to what had transpired during their negotiations; that he had specifically pointed out to Noble where he would have access to the highway, viz., at the place where the county road intersected; that the property was purchased by the commission with the understanding that Noble would retain that right of access; that he had pointed out to Noble that it would be his only point of access; that it was the understanding of

the parties that the right of access at the county road would remain.

In the view we take of this case it will be unnecessary to set forth the language of the deed or to construe any of its terms. We shall assume that the deed properly construed clearly did convey and relinquish all respondents Nobles' rights of direct access, including any right of access at the place where the county road intersected the highway.

We are reminded by appellant that our review of this equity case is de novo and that it is our province to weigh the evidence and reach our own conclusion as to its weight; and that to justify the equitable relief of reformation on the ground of mistake, the burden is on the party seeking that relief to show by clear and convincing evidence that the instrument did not express the agreement of the parties to it by reason of their mutual mistake. Walters v. Tucker, Mo., 308 S.W.2d 673, 679[7]. In the present case, inasmuch as all the evidence was adduced by respondents and inasmuch as all the testimony which went to the question of whether the deed in fact expressed the agreement of the parties or failed to do so by reason of a mutual mistake, was favorable to respondents, the only question as to whether there was in fact a mutual mistake is the credibility of that testimony. There is nothing in the record which causes us not to defer to the finding of the trial chancellor on that issue.

If the testimony adduced by respondents was credible, as the trial chancellor found and as we have found it was, it seems apparent that the only reasonable conclusion is that there was an agreement of the parties that the deed was to contain a reservation of an easement of access to new Highway 40 at the point where the existing county road intersected the existing highway. In other words, it seems plain that unless the deed provided for grantors' access to Highway 40 at the point where the county road intersected, then both parties did what neither intended to do because it is clear from the testimony that both par-

ties intended that the deed provide for grantors' access at the point noted. It follows that the failure of the deed to so provide was the result of a mutual mistake as to the legal meaning of the language used in the deed.

"It has been said it is the province of a court to enforce contracts and conveyances, not to make or alter them; but it is the duty of the court to enforce the contract that was really made, and when by mutual mistake a contract or other instrument is not expressed in such terms as have the force and effect that the parties intended, then it is the clear duty of the court to correct the mistake. This power of a court of equity to reform an instrument, which by reason of mistake fails to express the intention of the parties, has long been considered unquestionable. Leitensdorfer v. Delphy, 15 Mo. 160. And courts of equity have exerted the power to reform an instrument so as to make it speak the real agreement made between the parties in those cases where, because of the mistake or inadvertence of the scrivener, the writing fails to do so; * * *. However, a mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended." Walters v. Tucker, supra, 308 S.W.2d 675 [2–4].

Although the commission contends to the contrary, parol evidence was admissible to show the true intention of the parties to have included in the deed a reservation of an easement of access even though the deed as executed was unambiguous and in fact contained no such reservation. Walters v. Tucker, supra, 308 S.W.2d 675[1]. And the power of a court of equity to reform a deed includes the power to insert a reservation which has been omitted by mutual mistake. 45 Am.Jur., Reformation of Instruments, § 37, p. 604. Cf. Baumhoff v. Lochhaas, Mo., 253 S.W. 762.

Appellant contends, however, that equity will not reform a deed because of a

mutual mistake, where, as here, the mistake is one of law. It is true that there are expressions in some of the cases to the effect, e. g., that one cannot avoid his act or deed on the ground that he was ignorant of the law, Simmons v. Friday, 359 Mo. 812, 825, 224 S.W.2d 90, 99, or "That a mistake of law pure and simple will not afford an adequate ground for relief is well settled * * *." McIntyre v. Casey, Mo., 182 S.W. 966, 969[3]. It appears, however, that whatever effect the rule that equity will not relieve against a mistake of law may have in its application to various fact situations, it does not apply to the kind of a mistake involved in the present case whether that mistake be one of fact, of law, or of law and fact. The language of this court in the early case of Corrigan v. Tiernay, 100 Mo. 276, 280, 13 S.W. 401, is precisely applicable:

"The point pressed upon our attention is that, according to the answer, Patrick Tiernay had full knowledge of all of the facts, and the mistake was simply a mistake of law in supposing the deed would convey the title to him and his wife jointly. It is a well-established general rule that a court of equity will not grant relief against a mistake of law unmixed with any mistake of fact. Price v. Estill, 87 Mo. 378; Norton v. Highleyman, 88 Mo. 621. There are, however, some exceptions to this general rule. Cases arise where there is a mixed mistake of law and of fact in which relief will be granted. Thus in the case of Griffith v. Townley, 69 Mo. 13, an administrator sold land of his intestate, supposing that it was the fee that he was selling, and the purchaser supposed that it was the fee that he was buying. It transpired that nothing passed by the sale but the equity of redemption. It was held there was such a mutual mistake of fact and law as entitled the purchaser to relief. See also Cassidy v. Metcalf, 66 Mo. 519.

"But it is not necessary to a disposition of the case in hand to follow out the many distinctions taken in the class of cases just mentioned. If an agreement is what the parties thereto intended it should be, equity does not interfere because the parties did not understand its legal effect. 'The principle underlying the rule is,' says Mr. Pomeroy, 'that equity will not interfere for the purpose of carrying out an intention which the parties did not have when they entered into the transaction, but which they might or even would have had, if they had been more correctly informed as to the law.' 2 Pom. Eq. Jur., sec. 843. A different case is presented where the instrument, as it is reduced to writing, fails to express the contract which the parties actually entered into. In such cases equity will reform the contract, and this, too, though the instrument fails to express the contract which the parties made by reason of a mistake of law. Says the author last named: 'In short, if a written instrument fails to express the intention which the parties had in making the contract which it purports to contain, equity will grant its relief, affirmative and defensive, although the failure may have resulted from a mistake as to the legal meaning and operation of the terms or language employed in the writing.' [2 Pom.Eq.Jur.,] § 845."

In the present case the deed when executed failed to express the contract which the parties had actually entered into and thus equity will reform that deed even though the instrument fails to express the contract which the parties made by reason of a mistake of law.

In the early case of Leitensdorfer v. Delphy, 15 Mo. 160, this court said at page 166:

"The supreme court of the United States in Hunt v. Rousmaniere's Adm'r, 1 Peters [1] 13 [7 L.Ed. 27], say, 'there are certain principles of equity appli-

cable to this question, which as general principles we hold to be incontrovertible. The first is, that where an instrument is drawn and executed, which professes or is intended to carry into execution an agreement, whether in writing or by parol, previously entered into, but which by mistake of the draftsman, either as to fact or law, does not fulfil or which violates the manifest intention of the parties to the agreement, equity will correct the mistake, so as to produce a conformity of the instrument to the agreement.'

"* * * It is not necessary, in order to establish a mistake in an instrument, that it shall be shown that particular words were agreed upon by the parties as words to be inserted in the instrument. *It is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed, and that the instrument as executed is insufficient to effectuate their intention.*" (Italics present writer's.)

Bramhall v. Bramhall, Mo., 216 S.W. 766, was a suit to reform a deed on the ground that as a result of a mutual mistake the deed conveyed lands to plaintiff and the heirs of his body when the parties had agreed and intended that it convey title to plaintiff in fee. The court said at page 769: "Appellants say plaintiff, by acceptance of the first deed, was charged with knowledge of its contents; but this doctrine is inapplicable to the present action. The rule applicable is that if, after an agreement has been made, a mistake, either of law or fact, occurs in writing it out, so that it fails to express the contract of the parties, equity will reform it. 2 Pomeroy, Eq.Jur. (4th Ed.) § 845." See also, as directly supporting relief by reformation under the facts of this case, Williamson v. Brown, 195 Mo. 313, 331, 93 S.W. 791, 796; McVey v. Phillips, Mo., 259 S.W. 1065, 1067 [5]; Kanan v. Hogan, 307 Mo. 269, 270 S.W. 646.

■ Thus, even if it be conceded that when parties erroneously suppose that the words used in an instrument are legally effective to secure a certain result, the mistake is one of law, it is clear that equity will correct such a mutual mistake of law under the rules stated in the foregoing cases, provided, of course, that the fact of the mutual mistake is shown by clear and convincing evidence. The commentator, in a note in 135 A.L.R. 1452, says at page 1453: "The best-considered modern cases recognize that the main object of equitable jurisdiction should be to effectuate the intention of the parties to the instrument, and that any mistake made by them which would defeat such intention should be corrected in equity, irrespective of the question whether the mistake is one of law or of fact." Whether our decisions are all in full accord with the above statement, it is clear that they support the assertion when the mutual mistake is like the one shown in the present case.

■ Appellant's point 1C is: "In the absence of constitutional or statutory authority, the employees or agents of the state highway commission cannot by their representations, actions, or attempted agreements, bind the state or the state highway commission in the exercise of its duties as prescribed by the constitution and the statutes of the State of Missouri." The argument under that point consists of quotations from cases, two of which hold that an agent of the state highway commission may not legally agree that a certain road will be permanently located in a certain place because the commission and none of its agents may abdicate the power delegated to that commission to relocate or discontinue roads forming part of the state highway system; another of which holds that a state is not liable for the unauthorized exercise of power by its agents unless liability therefor is imposed by the constitution or statutes; and two more of which hold that a state is not answerable in damages for the negligent acts of its officers and agents. The only Missouri case cited is Aquamsi Land Co. v. City of Cape Girardeau, 346 Mo. 524, 142 S.W.2d 332, but that case is not mentioned

in the argument and its application is not apparent.

We are unable to discern the applicability of appellant's point aforequoted and its cited cases to any question in the present case. After quotations from the cited cases, appellant concludes that the agents of the commission had no authority to make the representations and agreement which the surviving agent Erwin said they made, because it was not shown that the commission at a regular meeting specifically delegated the specific authority to that particular agent to make the specific reservation in question.

We are of the opinion that the status of the pleadings and the evidence as reflected by the record precludes appellant from making that contention here.

As noted heretofore, respondents, as defendants below, filed a counterclaim to plaintiff's condemnation petition and averred therein that respondents Louis and Mary Noble had sold to the plaintiff certain land and executed and delivered a deed conveying it to plaintiff; that the parties to the transaction intended to reserve a right of access to the grantors in that deed; that it was so agreed between the parties, but that as a result of mutual mistake the deed did not expressly reserve that right of access, and defendants prayed for reformation of the deed. Appellant, as plaintiff below, did not file a reply to that counterclaim, although one was required. RSMo 1949, Section 509.010, V.A.M.S. It is probable that the contention that admittedly a right-of-way agent exceeded his authority in agreeing to a particular condition in a deed is an affirmative defense and that it must have been specifically pleaded, and that the burden of proof as to such defense was upon the defendant. See Berberet v. Myers, 240 Mo. 58, 144 S.W. 824, syllabus 19; 3 C.J.S. Agency § 312(2)b, p. 247, § 317(2)(a), p. 259; RSMo 1949, § 509.090, V.A.M.S. Be that as it may, however, RSMo 1949, Section 509.100, V.A.M.S., provides in part, "Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleadings." Appellant knew, of course, that the very deed relied upon in its condemnation petition and referred to in respondents' counterclaim had been negotiated and obtained through its right-of-way agents. Thus, it seems clear that appellant's failure to have raised the issue of its agents having exceeded their authority in making the agreement averred in respondents' counterclaim, was an admission of their authority to so agree.

Furthermore, appellant, as we have noted, adduced no evidence and did not at the trial by a direct statement or inference raise any issue as to the commission's agents having exceeded their authority in agreeing to take the deed in question with a reservation of access therein, nor did appellant specifically include any such point in his motion for new trial. On the contrary, appellant tacitly conceded at the trial, and indeed makes no contrary contention here, that Messrs. Erwin and Hoehler were the duly authorized agents of the commission to negotiate for the purchase of property for the right of way in question and to accept deeds of conveyance thereof. And certainly the commission does have the power, through its duly employed agents, to purchase land for right of ways for reconstructed highways. RSMo 1949, Section 227.120, V.A.M.S.

We are of the opinion that under the pleadings and evidence in this case appellant is in no position to here urge that its right-of-way agents exceeded their authority in agreeing that the deed in question was to contain a reservation of access.

The judgment is affirmed.

HOLMAN and HOUSER, CC., concur.

PER CURIAM.

The foregoing opinion by COIL, C., is adopted as the opinion of the court.

All concur.