JAMES N. CROUCH v. FRANK C. THOMPSON, Administrator of JUDSON M. THOMPSON, Deceased, Appellant.

### Division Two, January 6, 1914.

1. **CONTRACTS: Mutual Mistake.** A mutual mistake in a written instrument presupposes a prior or preceding agreement between the parties. To show the mutual mistake in the instrument the preceding agreement must *ex necessitate* be shown.

2. ——: ——: **Evidence.** The party alleging a mutual mistake in a written contract must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt in the mind of the court as to either of these points. The mistake must be mutual and common to both parties. It must appear that both have done what neither intended.

3. ——: ——: ——: **Reformation: Option.** Plaintiff offered to buy deceased's leasehold or take an option on it. Deceased's agent said he did not think deceased would give an option; that deceased would sell for $140,000 cash, net. Plaintiff then wrote up a contract by which he agreed to buy the leasehold, for $140,000, the sale expressed to be conditioned upon the plaintiff's acquiring the fee with the leasehold, and it being further understood and agreed, according to the words of the contract, "that unless the title is acquired to both fee and leasehold simultaneously then this sale is void." Deceased did not own the fee. Plaintiff and deceased signed the contract without further negotiation. *Held*, in view of the lack of any evidence of such precedent agreement, that the contract cannot be reformed, on the ground of mutual mistake, so as to give the plaintiff an option to take or to refuse the leasehold regardless of whether he procured the fee.

Appeal from St. Louis City Circuit Court.—*Hon. James E. Withrow*, Judge.

REVERSED AND REMANDED (*with directions*).

*Arthur Digby* and *E. W. Banister* for appellant.

(1) Before a court of equity will reform a written instrument on the ground of mistake the evidence must be clear and convincing that there was a

mistake made and that the mistake was mutual. Hunter v. Patterson, 142 Mo. 310; Judson v. Mullinax, 145 Mo. 630; Brohammer v. Hoss, 17 Mo. App. 1; Henderson v. Beasley, 137 Mo. 199; Sweet v. Owens, 109 Mo. 1; Meridith v. Holmes, 105 Mo. App. 343; Fanning v. Doan, 139 Mo. 392; Brown v. Gwin, 197 Mo. 499; Bartlett v. Brown, 121 Mo. 353. (2) A mutual mistake in a written instrument presupposes a prior or preceding agreement between the parties. Dougherty v. Dougherty, 204 Mo. 237. (3) A mistake that would justify a court of equity in reforming a contract must be a mutual mistake of fact and the party who seeks this equitable relief must show that he is without negligence in the matter. Miller v. Railroad, 162 Mo. 424; Thompson v. Railroad, 142 Mo. App. 234.

*Buder & Buder* and *Spencer & Donnell* for respondent.

(1) The court reformed the written contract to make it read in accord with the undisputed understanding and agreement of both parties and in so doing acted well within its rights and pursuant to its duties. "When by mistake a contract is not expressed in such terms as to have the force and effect the parties intended, it is the duty of the court to correct the mistake." Leitensdorfer v. Delphy, 15 Mo. 161; Hook v. Craighead, 32 Mo. 405; Cassidy v. Metcalf, 66 Mo. 529. It is not necessary in order to establish a mistake in an instrument to show that particular words were agreed to be inserted. It is sufficient that the parties had agreed to accomplish a particular object by the instrument to be executed and that the instrument as executed is insufficient to show their intention. Leitensdorfer v. Delphy, 15 Mo. 161; Williamson v. Brown, 105 Mo. 333; Words & Phrases, "Mutual Mistake." (2) "Although it is said that the evidence required to prove a mistake must be as satisfactory as if the mistake were omitted, yet this and similar remarks

of judges however distinguished form no rule of law to direct courts in dispensing justice. When the mind of a judge is entirely convinced upon any disputed question of fact or law, he is bound to act upon that conviction." Leitensdorfer v. Delphy, 15 Mo. 160; Williamson v. Brown, 195 Mo. 333; Fanning v. Doan, 139 Mo. 410. (3) All the more vigorously will a court of equity reform a written contract which by mutual mistake does not evidence the agreement of the parties when, as in this case, one of the parties fraudulently endeavors to take advantage of the mutual mistake.

ROY, C.—Action to reform contract so as to correct a mistake, and to recover damages for breach of the contract as reformed. Plaintiff had a decree of reformation and judgment for damages for breach of the contract assessed at $10,500. Defendant appeals.

**Reformation of Contract.**

The petition alleges that plaintiff and Judson M. Thompson, defendant's intestate, entered into a contract in writing as follows:

"St. Louis, Mo., July 3, 1907.

"Received of J. N. Crouch the sum of five hundred dollars, being earnest money and part purchase price for the following described property to-wit: An unexpired leasehold on lot of ground situated in the city of St. Louis, State of Missouri, being the leasehold, together with the building and all improvements thereon, made by the Mission Free School to the undersigned for a term of ninety-nine years, from April 1, 1880. Said property fronting 59' 4" (fifty-nine feet four inches) on the west line of Eighth street, by a depth of 127' 6" (one hundred and twenty-seven feet six inches) westwardly to an alley, in city block 194, and known as Nos. 411-13 and 415 North Eighth street, bounded on the east by Eighth street, north by property now or formerly of Patrick Yore estate, west by

an alley, and south by property known as Victoria Building. Said leasehold to be conveyed for the sum of $140,000 net cash, to said J. N. Crouch, his representatives, successors or assigns. Terms of sale to be cash, less said earnest money paid this day. Rents to go to seller until the day of closing sale. Taxes for 1907, one-half to be paid by seller and one-half for 1907, and all taxes thereafter to be paid by purchaser. To be conveyed by perfect title, free and clear of all encumbrances, except taxes as above specified, by a special warranty deed and by proper assignment of lease. Sale to be closed on or before August 1, 1907. This sale is made conditioned upon the said J. N. Crouch, his successors, representatives or assigns, acquiring simultaneously, with this leasehold, also the fee to the land thereunder, and by a perfect title thereto, and it is understood and agreed that unless the title is acquired to both fee and leasehold simultaneously then this sale is void, and the earnest money this day paid shall be returned to said J. N. Crouch.

"Executed in duplicate on the day and year first above written.

"J. M. Thompson,
"By J. E. Kaime and Bro. R. E. Co., Agents.
"J. N. Crouch.
"Approved: J. M. Thompson."

It also alleged the following:

"That at the time said contract was reduced to writing, as hereinabove set out, it was agreed by and between plaintiff and said Judson M. Thompson, that plaintiff should not be required to complete the sale unless plaintiff should be able to secure before August 1, 1907, the fee to the property, the leasehold of which he was purchasing, as hereinabove set out, and that if the plaintiff was thus unable to secure said fee, that plaintiff should have returned to him the earnest money of five hundred dollars, paid under the contract, and should be entitled, if he so desired, to proceed no

further with the contract, and that it was at the time
determined and agreed by and between plaintiff and
said Judson M. Thompson, that said agreement was
for the sole and exclusive benefit of plaintiff, and could
be by plaintiff waived or not, as he elected, and that
the written contract to be executed by plaintiff and
said Judson M. Thompson should, in its terms, carry
out this agreement.

"That subsequently the written contract, as here-
inabove set out, was drawn up and signed by plaintiff
and by said Judson M. Thompson, through his agents,
the J. E. Kaime & Bro. R. E. Co., and that the said
contract was approved and signed by said Judson M.
Thompson, but that by mistake the said written con-
tract did not correctly recite the provision in regard to
the acquisition of the fee by plaintiff.

"That at the time of the signing of said contract it
was expressly agreed by said Judson M. Thompson
that he was not interested in said fee, and that the
clause in said contract in relation thereto was a mat-
ter solely for the interest of plaintiff, to be waived or
not by him at his pleasure.

"Plaintiff further states that the provision in said
contract concerning the acquisition of the fee by him
was waived by him and that said Judson M. Thomp-
son was released before August 1, 1907, from the
provision concerning the acquisition of the fee by
plaintiff, and that plaintiff demanded of said Judson
M. Thompson the leasehold which said Judson M.
Thompson had agreed to sell, as hereinabove set out.

"That plaintiff has not acquired the said fee and
is not now and was not the owner thereof on August
1, 1907, or at any other time, but that with a view to
prevent plaintiff from acquiring the leasehold which
by said contract he was entitled to acquire, said Jud-
son M. Thompson, subsequent to the date of said
written contract, and in violation of the agreement en-

tered into between him and plaintiff, and in fraud of plaintiff, entered into negotiations ·with one Simon Van Raalte for the purpose of selling to said Simon Van Raalte before August 1, 1907, the leasehold which plaintiff was by said contract entitled to acquire, and conspired with said Simon Van Raalte and others to purchase the said fee to the property hereinabove described for the purpose of preventing plaintiff from acquiring the said leasehold interest therein, and that said Judson M. Thompson sold to said Simon Van Raalte the leasehold which by his said contract he had agreed to sell to plaintiff, and sold the same to said Simon Van Raalte long before August 1, 1907, and that on August 1, 1907, said Judson M. Thompson had parted with the leasehold interest which he had contracted to sell to plaintiff, as in the contract hereinabove set out, and had placed himself in a position where it was impossible for him, the said Judson M. Thompson, to comply with his contract of July 3, 1907.''

The petition then alleges that Judson M. Thompson retained said sum of $500, refusing to repay it and to deliver the leasehold to the plaintiff, alleging plaintiff's damages at $20,500. The answer was a general denial.

The J. E. Kaime & Bro. Real Estate Company was the agent for Thompson in making the sale. Mr. David F. Kaime of that company testified:

"Q. The last contract dated July 3, between Mr. Thompson, by J. E. Kaime & Brother Real Estate Co., Agents, and Mr. Crouch—by whom was that drawn? A. That was drawn by Mr. Crouch, if I remember right.

"Q. Now, at the time what was your conversation with Mr. Crouch preceding and leading up to the contract as to Mr. Crouch's buying this leasehold, and acquiring simultaneously the fee to the same property? (Defendant's counsel objects to the ques-

tion; objection overruled; defendant at the time duly excepts.) A. Mr. Crouch wanted me to buy the leasehold and buy the fee; he told me he had an option on the fee, and he wanted to get an option or buy the leasehold, make a straight bargain for it. I told him I did not think that Mr. Thompson would give any option. Mr. Thompson agreed to sell for $140,000, cash, net, would not pay me any commission or anybody else, he would take $140,000 net.

"Q. What was said by Mr. Thompson with reference to the clause put in there by Mr. Crouch concerning the purchase of the fee? A. He said he cared nothing about the fee, he had no interest in it, he cared nothing about it, he didn't care whether he purchased it or not; that was his expression.

"By the Court: Mr. Thompson did not care whether Mr. Crouch purchased it? A. Yes, sir, he had no interest in it, he was abrupt on that question, shut me off when I talked with him about it.

"By Mr. Buder: Q. Did he himself require the clause to be inserted in the contract? A. About the fee?

"Q. Yes. A. No, sir.

"Q. At whose instance was it put in there?

"Mr. Buder: The witness said Mr. Crouch drew the contract. A. Mr. Crouch drew the contract.

"Mr. Buder: If he drew the contract he put it in.

"The Court: The evidence of the witness so far tends to show that Mr. Crouch prepared the contract and inserted the clause himself.

"Mr. Buder: That is correct.

"The Court: Now he claims the clause was not what he intended to express.

"By Mr. Buder: Q. At whose instance was it put in there? (Defendant's counsel objects.)

"Q. What was said by Mr. Crouch in reference to wanting the clause in the contract?

"Mr. Digby: Was Mr. Thompson present? I object to it unless he shows that Mr. Thompson was present at the time.

"The Court: The witness testifies and one memorandum they offer tends to show that the J. E. Kaime & Brother Real Estate Co. was the agent for Mr. Thompson in that deal and if that company was the agent for Mr. Thompson in negotiating the deal leading up to the final contract, it seems to me what was said by Mr. Kaime would be competent. There are one or two memoranda tending to show that Mr. Kaime represented Mr. Thompson.

"Mr. Digby: Not to sell at $140,000.

"Mr. Buder: He approved of the agency.

"The Court: The only memorandum so far is the letter of June 11, addressed to Messers. J. E. Kaime & Brother Real Estate Co., 'I hereby authorize you to sell,' that is the letter of $155,000, and afterwards there is a letter of Mr. Kaime, approved by J. M. Thompson. There cannot be much question that the evidence tends to show that the Kaime & Brother Real Estate Co. were the agents of Mr. Thompson in the transaction. I do not see any escape from that.

"By Mr. Buder: What was said by Mr. Crouch in reference to wanting the clause in the contract. (Defendant's counsel objects to the question unless it is shown that Mr. Thompson was present. Objection overruled. Defendant at the time duly excepts.) A. Mr. Crouch said he wanted it in there to protect himself so that in case he didn't get the fee simple title to the property he would not be obligated to take the leasehold, that was his explanation.

"Q. Did you convey that statement of Mr. Crouch to Mr. Thompson? A. Mr. Thompson read it over and spoke about the statement in there, and that was the time he told me he cared nothing about the leasehold.

"Q. You told him then what Mr. Crouch had stated to you he wanted it in there for? A. I told him that Mr. Crouch's reason that he wanted to protect himself, that he wouldn't have to take the leasehold if he did not get the fee simple."

Mr. Benjamin F. Gray, of the J. E. Kaime & Bro. R. E. Co. testified for the plaintiff as follows:

"Q. Have you any knowledge in reference to the clause that was put in by Mr. Crouch in the contract of sale drawn by Mr. Crouch, just referred to, dated July 3, not requiring Mr. Crouch to take the property unless he acquired the fee? A. Yes, sir.

"Q. What was that conversation you had with Mr. Thompson? A. Well, at the time the contract was made it was stated to Mr. Thompson that this clause was to be put in there so if he did not acquire the fee he would not be compelled to take the leasehold.

"Q. Did he say anything else with reference to that clause as to his interest in it? A. He said he didn't own the fee, had nothing to do with it, didn't care about it at all."

Plaintiff's evidence showed that the day before the expiration of the time for closing the contract, plaintiff offered to pay Thompson the balance of the purchase money and demanded the deed and the closing of the deal; and that Thompson refused, saying that he had sold the leasehold, and that he had been told the Crouch contract was not valid.

The evidence introduced by plaintiff tended to show that the leasehold was worth $155,000 or $160,000. The evidence for defendant tended to show that it was worth only about $100,000. Thompson sold the leasehold to N. Rosenthal, who purchased it in behalf of Simon Van Raalte, who had been negotiating with plaintiff for it. The price paid was $140,000. The contract with Rosenthal had the following: "It is understood and agreed that there is now outstanding a

written option contract, a copy of which is hereto attached, marked 'Exhibit A,' from me to J. N. Crouch, giving to said Crouch the right, upon the terms and subject to the limitations contained in said contract, to purchase and acquire said unexpired leasehold estate from me, and that this agreement is made subject to the strict terms of said agreement so given to said Crouch, and if said Crouch shall exercise said option strictly in accordance with its terms, this agreement shall become and be null and void, and I will thereupon, at once, repay to said N. Rosenthal, or assigns, the earnest money hereby receipted for. The sale hereby provided for shall be closed in sixty days from the date hereof.''

The court in effect decreed a reformation of the contract as prayed for in the petition.

The decree is without evidence to support it. The only negotiation between the parties prior to the signing of the written contract was stated by Mr. Kaime as follows: "Mr. Crouch wanted me to buy the leasehold and buy the fee, he told me he had an option on the fee, and he wanted to get an option or buy the leasehold, make a straight bargain for it, I told him I did not think that Mr. Thompson would give any option. Mr. Thompson agreed to sell for $140,000, cash, net, would not pay me any commission or anybody else, he would take $140,-000 net.''

**No Mutual Mistake.**

That clearly shows that plaintiff wanted either an option or he wanted to make a straight bargain for the leasehold. It shows that Kaime did not claim to have any power to bind Thompson to anything but a straight sale. That evidence, and it is all there is on the subject, not only fails to show an agreement, but it shows that plaintiff and Kaime both knew that Kaime had no power to make an agreement for an option.

Without further negotiation, Crouch wrote up the contract and signed it. Thompson signed it. The contract as signed was the only one that was ever negotiated or agreed upon. When we say that Kaime had no power to agree to an option, we mean that the plaintiff's own evidence shows that he did not agree to one, and at the same time knew that he had no power to make such agreement.

The evidence shows that both Crouch and Thompson made some statements about the clause which was written in the contract and which is now in controversy. The plaintiff said he wanted it in there "to protect himself so that in case he didn't get the fee simple title to the property he would not be obligated to take the leasehold." The clause as originally written was good and sufficient to do just what the plaintiff said he wanted. He was thereby released from any obligation in case he failed to acquire a fee.

Thompson said he "did not own the fee, had nothing to do with it, didn't care about it at all." That showed, if anything, that he was perfectly satisfied with the contract as written, but had not the slightest tendency to show that he ever agreed to any other contract. There is not a word of evidence to show that it was the intention of either party that, in case of plaintiff's failure to get the fee, he should be free, but Thompson should be bound. The plaintiff wrote the contract, and now, after the other party is dead, asks the court to change it so as to make it what neither party ever contemplated.

"The party alleging the mistake must show exactly in what it consists, and the correction that should be made. The evidence must be such as to leave no reasonable doubt upon the mind of the court as to either of these points. The mistake must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended." [Hearne v. Marine Ins. Co., 20 Wall. 488.]

"A mutual mistake in a written instrument presupposes a prior or preceding agreement between the parties. To show the mutual mistake in the written instrument the preceding agreement must *ex necessitate* be shown." [Dougherty v. Dougherty, 204 Mo. l. c. 237.]

The judgment is reversed and the cause is remanded with direction to dismiss the plaintiff's bill. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All the judges concur.