**Rose L. WALTERS, Appellant,**

v.

**Charles D. TUCKER, Sr., and Myrtle Tucker, his Wife, Respondents.**

No. 44385.

Supreme Court of Missouri.

Division No. 1.

July 11, 1955.

Motion for Rehearing and to Transfer to Court en Banc Denied Sept. 12, 1955.

L. A. Robertson and Alexander & Robertson, St. Louis, for appellant.

David J. Tompkins, St. Louis, for respondents.

HOLLINGSWORTH, Judge.

This is an action to quiet title to certain real estate situate in the City of Webster

Groves, St. Louis County, Missouri. Plaintiff and defendants are the owners of adjoining residential properties fronting northward on Oak Street. Plaintiff's property, known as 450 Oak Street, lies to the west of defendants' property, known as 446 Oak Street. The controversy arises over their division line. Plaintiff contends that her lot is 50 feet in width, east and west. Defendants contend that plaintiff's lot is only approximately 42 feet in width, east and west. The trial court, sitting without a jury, found the issues in favor of defendants and rendered judgment accordingly, from which plaintiff has appealed.

The common source of title is Fred F. Wolf and Rose E. Wolf, husband and wife, who in 1922 acquired the whole of Lot 13 of West Helfenstein Park, as shown by plat thereof recorded in St. Louis County. In 1924, Mr. and Mrs. Wolf conveyed to Charles Arthur Forse and wife the following described portion of said Lot 13:

"The West 50 feet of Lot 13 of West Helfenstein Park, a Sub-division in United States Survey 1953, Twp. 45, Range 8 East, St. Louis County, Missouri, * * *."

Plaintiff, through mesne conveyances carrying a description like that above, is the last grantee of and successor in title to the aforesaid portion of Lot 13. Defendants, through mesne conveyances, are the last grantees of and successors in title to the remaining portion of Lot 13.

At the time of the above conveyance in 1924, there was and is now situate on the tract described therein a one-story frame dwelling house (450 Oak Street), which was then and continuously since has been occupied as a dwelling by the successive owners of said tract, or their tenants. In 1925, Mr. and Mrs. Wolf built a 1½-story stucco dwelling house on the portion of Lot 13 retained by them. This house (446 Oak Street) continuously since has been occupied as a dwelling by the successive owners of said portion of Lot 13, or their tenants.

Despite the apparent clarity of the description in plaintiff's deed, extrinsic evidence was heard for the purpose of enabling the trial court to interpret the true meaning of the description set forth therein. At the close of all the evidence the trial court found that the description did not clearly reveal whether the property conveyed "was to be fifty feet along the front line facing Oak Street or fifty feet measured Eastwardly at right angles from the West line of the property * * *"; that the "difference in method of ascertaining fifty feet would result in a difference to the parties of a strip the length of the lot and approximately eight feet in width"; that an ambiguity existed which justified the hearing of extrinsic evidence; and that the "West fifty feet should be measured on the front or street line facing Oak Street." The judgment rendered in conformity with the above finding had the effect of fixing the east-west width of plaintiff's tract at about 42 feet.

Plaintiff contends that the description in the deed is clear, definite and unambiguous, both on its face and when applied to the land; that the trial court erred in hearing and considering extrinsic evidence; and that its finding and judgment changes the clearly expressed meaning of the description and describes and substitutes a different tract from that acquired by her under her deed. Defendants do not contend that the description, on its face, is ambiguous, but do contend that when applied to the land it is subject to "dual interpretation"; that under the evidence the trial court did not err in finding it contained a latent ambiguity and that parol evidence was admissible to ascertain and determine its true meaning; and that the finding and judgment of the trial court properly construes and adjudges the true meaning of the description set forth in said deed.

Attached hereto is a reduced copy of an unchallenged survey of Lot 13, as made by plaintiff's witness, Robert J. Joyce, surveyor and graduate (1928) in civil engineering at Massachusetts Institute of Technology, for use in this litigation. Inasmuch as the two properties here in question front northward on Oak Street, the plat is made to be viewed from the bottom toward the top, which in this instance is from north to south:

# WEST HELFENSTEIN PARK

SCALE: 1" = 20'

It is seen that Lot 13 extends generally north and south. It is bounded on the north by Oak Street (except that a small triangular lot from another subdivision cuts off its frontage thereon at the northeast corner). On the south it is bounded by the Missouri Pacific Railroad right of way. Both Oak Street and the railroad right of way extend in a general northeast-southwest direction, but at differing angles.

Joyce testified: The plat was a "survey of the West 50 feet of Lot 13 of West Helfenstein Park". In making the survey the west boundary line of Lot 13 was first established. Lines 50 feet in length (one near the north end and one near the south end of the lot, as shown by the plat) were run eastwardly at right angles to the west line of the lot, and then a line was run parallel to the west line and 50 feet, as above measured, from it, intersecting both the north and south boundaries of the lot. This line, which represented 50 feet in width of Lot 13, made a frontage of 58 feet, 2⅜ inches, on Oak Street, and 53 feet, 8¾ inches, on the railroad right of way. The line, as thus measured, comes within 1 foot, 1¾ inches, of the west front corner of the stucco house (446 Oak Street), within 1 foot, 7 inches, of the west rear corner thereof, and within less than 1 foot of a chimney in the west wall.

The trial court refused to permit the witness to testify, but counsel for plaintiff offered to prove that, if permitted, witness would testify that the methods used by him in making the survey were in accordance with the practices and procedures followed in his profession in determining the boundaries of lots such as was described in the deed. The witness further testified that the method used by him was the only method by which a lot such as that described in the deeds in question could be measured having precisely and uniformly a width of 50 feet; and that a 50 foot strip is a strip with a uniform width of 50 feet.

Defendants also introduced in evidence a plat of Lot 13. It was prepared by Elbring Surveying Company for use in this litigation. August Elbring, a practicing surveyor and engineer for 34 years, testified in behalf of defendants: "In view of the fact that the deed (to the west 50 feet of Lot 13) made reference to the western 50 feet, and in view of the fact that the line which would have been established construing the dimension to be 50 feet at right angles, coming within a foot or so of an existing building (the stucco house), we felt that the line was intended to have been placed using the frontage of 50 feet on Oak Street and thence running the line (southward) parallel to the western line of Lot 13." The line so run, as being the east line of plaintiff's tract, was 8.01 feet west of the northwest corner of the stucco house and 8.32 feet west of its southwest corner. The Elbring plat does not show the actual width of plaintiff's tract as thus measured. But, concededly, there is no point on it where it approximates 50 feet in width; and, while it "fronts" 50 feet on Oak Street, its actual width is between 42 and 43 feet.

Both plats show a concrete driveway 8 feet in width extending from Oak Street to plaintiff's garage in the rear of her home, which, the testimony shows, was built by one of plaintiff's predecessors in title. The east line of plaintiff's tract, as measured by the Joyce (plaintiff's) survey, lies 6 or 7 feet east of the eastern edge of this driveway. Admittedly, the driveway is upon and an appurtenance of plaintiff's property. On the Elbring (defendants') plat, the east line of plaintiff's lot, as measured by Elbring, is shown to coincide with the east side of the driveway at Oak Street and to encroach upon it 1.25 feet for a distance of 30 or more feet as it extends between the houses. Thus, the area in dispute is essentially the area between the east edge of the driveway and the line fixed by the Joyce survey as the eastern line of plaintiff's tract.

Plaintiff adduced testimony to the effect that she and several of her predecessors in title had asserted claim to and had exercised physical dominion and control over all of the 50 feet in width of Lot 13, which included the concrete driveway and 6 or 7

feet to the east thereof. Defendants adduced testimony to the effect that they and their predecessors in title had asserted claim to and had exercised physical dominion and control over all of Lot 13 east of the driveway. The view we take of this case makes it unnecessary to set forth this testimony in detail.

The description under which plaintiff claims title, to wit: "The West 50 feet of Lot 13 * * *", is on its face clear and free of ambiguity. It purports to convey a strip of land 50 feet in width off the west side of Lot 13. So clear is the meaning of the above language that defendants do not challenge it and it has been difficult to find any case wherein the meaning of a similar description has been questioned. See Mississippi County v. Byrd, 319 Mo. 697, 4 S.W.2d 810, 812 [5]; Adkins v. Quest, 79 Mo.App. 36.

 · The law is clear that when there is no·inconsistency on the face of a deed and, on application of the description to the ground, no· inconsistency appears, parol evidence is not admissible to show that the parties intended to convey either more or less or different ground from that described. But where there are conflicting calls in a deed, or the description may be made to apply to two or more parcels, and there is nothing in the deed to show which is meant, then parol evidence is admissible to show the true meaning of the words used. Meinhardt v. White, 341 Mo. 446, 107 S.W. 2d 1061, 1064 [4, 5]; Detroit, Grand Haven & Milwaukee R. Co. v. Howland, 246 Mich. 318, 224 N.W. 366, 68 A.L.R. 1, and annotation; 16 Am.Jur., Deeds, §§ 412–414, pp. 673–674; Thompson on Real Property, Vol. 6, §§ 3280–3287, pp. 454–468. "The office of extrinsic evidence as applied to . the description of a parcel is to explain the latent ambiguity or to point out the property described on the ground. *Such evidence must not contradict the deed, or make a description of other land than that described*

*in the deed."* (Emphasis ours.) Thompson on Real Property, Vol. 6, § 3287, p. 468.

██ No ambiguity or confusion arises when the description here in question is applied to Lot 13. The description, when applied to the ground, fits the land claimed by plaintiff and cannot be made to apply to any other tract. When the deed was made, Lot 13 was vacant land except for the frame dwelling at 450 Oak Street. The stucco house (446 Oak Street) was not built until the following year. Under no conceivable theory can the fact that defendants' predecessors in title (Mr. and Mrs. Wolf) thereafter built the stucco house within a few feet of the east line of the property described in the deed be construed as competent evidence of any ambiguity in the description. Neither could the fact, if it be a fact, that the Wolfs and their successors in title claimed title to and exercised dominion and control over a portion of the tract be construed as creating or revealing an ambiguity in the description.

██ Whether the above testimony and other testimony in the record constitute evidence of a mistake in the deed we do not here determine. Defendants have not sought reformation, and yet that is what the decree herein rendered undertakes to do. It seems apparent that the trial court considered the testimony and came to the conclusion that the parties to the deed did not intend a conveyance of the "West 50 feet of Lot 13", but rather a tract fronting 50 feet on Oak Street. And, the decree, on the theory of interpreting an ambiguity, undertakes to change (reform) the description so as to describe a lot approximately 42 feet in width instead of a lot 50 feet in width, as originally described. That, we are convinced, the courts cannot do.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with the views expressed.

All concur.