Rose L. WALTERS, a/k/a Rose Leona
Walters, Plaintiff (Respondent),

v.

Charles D. TUCKER, Sr., and Myrtle Tucker,
his wife, Defendants (Appellants).

No. 45927.

Supreme Court of Missouri,
Division No. 1.

Dec. 9, 1957.

Motion for Rehearing or to Transfer to
Court en Banc Denied Jan. 13, 1958.

**674**

David J. Tompkins and Ackert, Giesecke & Tompkins, St. Louis, for appellants.

L. A. Robertson and Alexander & Robertson, St. Louis, for respondent.

.VAN OSDOL, Commissioner.

Action to try, ascertain and determine title to described real estate, a narrow strip of land in Webster Groves, St. Louis County; and for injunctive relief. Defendants by amended answer sought · the relief of reformation of a deed; alleged title by adverse possession; and also prayed for injunctive relief. The trial court found for plaintiff, Rose L. Walters, and against defendants, Charles D. Tucker and Myrtle Tucker, on all issues; decreed that plaintiff was and is in possession and the owner in fee simple of the described real estate; and ordered that defendants be enjoined from interfering with plaintiff's use and enjoyment of the property. Defendants have appealed.

Herein upon appeal, defendants-appellants contend the evidence was clear and cogent, and overwhelming in establishing that a mutual mistake in the description of the property was made in an original deed and in subsequent conveyances, and that plaintiff-respondent had notice or knowledge thereof; and that, under the evidence, defendants-appellants are entitled to a decree reforming the deed. Additionally, defendants-appellants contend the trial court also erred in finding for plaintiff because, they say, the evidence established title in defendants by adverse possession.

This is the second appeal in this case. See Walters v. Tucker, Mo.Sup., 281 S.W. 2d 843, wherein the facts pertaining to the origin of this title controversy are stated, and wherein appears a reproduction of a survey which is of aid in locating the narrow tract, title to which is in dispute.

Upon retrial of the case, on remand, the transcript upon the first appeal was considered in evidence, and the parties introduced additional evidence tending to support and to refute the factual bases for the relief of reformation (which, as indicated supra, defendants on remand had sought by amended answer); and for a judgment decreeing title by adverse possession, as well as for injunctive relief.

In initially endeavoring to lend clarity to the instant opinion, we quote this court's former statement of the undisputed facts pertaining to the general location of the property, and of the undisputed source of the claimed titles of the respective parties, 281 S.W.2d 843, at page 844, as follows,

" * * * Plaintiff and defendants are the owners of adjoining residential properties fronting northward on Oak Street. Plaintiff's property, known as 450 Oak Street, lies to the west of defendants' property, known as 446 Oak Street. The controversy arises over their division line. Plaintiff contends that her lot is 50 feet in width, east and west. Defendants contend that plaintiff's lot is only approximately 42 feet in width, east and west. * * *

"The common source of title is Fred F. Wolf and Rose E. Wolf, husband and wife, who in 1922 acquired the whole of Lot 13 of West Helfenstein Park, as shown by plat thereof recorded in St. Louis County. In 1924, Mr. and Mrs Wolf conveyed to Charles Arthur Forse and wife the following described portion of said Lot 13:

" 'The West 50 feet of Lot 13 of West Helfenstein Park, a Subdivision in United

States Survey 1953, Twp. 45, Range 8 East, St. Louis County, Missouri, * * *.'

"Plaintiff, through mesne conveyances carrying a description like that above, is the last grantee of and successor in title to the aforesaid portion of Lot 13. Defendants, through mesne conveyances, are the last grantees of and successors in title to the remaining portion of Lot 13.

"At the time of the above conveyance in 1924, there was and is now situate on the tract described therein a one-story frame dwelling house (450 Oak Street), which was then and continuously since has been occupied as a dwelling by the successive owners of said tract, or their tenants. In 1925, Mr. and Mrs. Wolf built a 1½ story stucco dwelling house on the portion of Lot 13 retained by them. This house (446 Oak Street) continuously since has been occupied as a dwelling by the successive owners of said portion of Lot 13, or their tenants."

Again referring to the former opinion, 281 S.W.2d 843, at page 847, it will be observed this court held that the description in the deed under which plaintiff claims title, to wit: "The West 50 feet of Lot 13 * * *," is on its face, and when applied to the ground, clear and free of ambiguity; and that extrinsic evidence could not be considered to contradict the unambiguous deed or to make a description of other or lesser land than described in the unambiguous deed. The fact that defendants had not sought reformation of the deed on the ground of mistake was noted; and the judgment for defendants was reversed and the cause remanded for further proceedings not inconsistent with the views expressed in the opinion.

■ But upon the retrial of the case on the supporting issue of mutual mistake raised by the amended answer, evidence, extrinsic to the deed, including parol evidence, but relevant in tending to show the true transaction, agreement or intention of the parties to buy, sell, and convey less or different ground than that described in the unambiguous deed, was admissible on the ultimate issue of defendants' right to the relief of reformation based on mutual mistake. Vol. 3, Pomeroy's Equity Jurisprudence, 5th Ed., § 859, pp. 352–353.

■ It has been said it is the province of a court to enforce contracts and conveyances, not to make or alter them; but it is the duty of the court to enforce the contract that was really made, and when by mutual mistake a contract or other instrument is not expressed in such terms as have the force and effect that the parties intended, then it is the clear duty of the court to correct the mistake. This power of a court of equity to reform an instrument, which by reason of mistake fails to express the intention of the parties, has long been considered unquestionable. Leitensdorfer v. Delphy, 15 Mo. 160. And courts of equity have exerted the power to reform an instrument so as to make it speak the real agreement made between the parties in those cases where, because of the mistake or inadvertence of the scrivener, the writing fails to do so; and a court of equity will exercise this power not only as between the original parties, but as to those claiming under them in privity, such as personal representatives, heirs, assigns, grantees, judgment creditors or purchasers from them with notice of the facts. If there are circumstances which in common reason and prudence ought to put a party to particular inquiry and by which inquiry he could have discovered the facts, the party is not considered a purchaser without notice. However, a mistake affording ground for the relief of reformation must be mutual and common to both parties to the instrument. It must appear that both have done what neither intended. Sicher v. Rambousek, 193 Mo. 113, 91 S.W. 68; Crouch v. Thompson, 254 Mo. 477, 162 S.W. 149; Kidd v. Brewer, 317 Mo. 1047, 297 S.W. 960; Luker v. Moffett, 327 Mo. 929, 38 S.W.2d 1037; Feeler v. Gholson, Mo.Sup., 71 S.W.2d 727; Steger v. Seabaugh, 346 Mo. 728, 142 S.W.2d 1001; Hoxsey Hotel Co. v. Farm & Home Savings & Loan Ass'n, 349 Mo. 880, 163 S.W.2d 766.

With respect to a claim of title by adverse possession—although a claimant, upon occupancy under a mistake as to the true boundary, did not intend to take land from the true owner and did not intend to occupy and possess land to which he had no record title, his possession may be hostile and adverse if he intended to occupy and did occupy as the owner. In the case of Agers v. Reynolds, Mo.Sup., 306 S.W.2d 506, 512, we quoted and reaffirmed the language of this court in State ex rel. Edie v. Shain, 348 Mo. 119, at page 123, 152 S.W.2d 174, at page 176, as follows, " 'If the possessor occupies the land in question intending to occupy that particular piece as his own, his occupancy is adverse. It is not necessary that he intend to take away from the true owner something which he knows belongs to another, or even that he be indifferent as to the facts of the legal title. It is the intent to possess, and not the intent to take irrespective of his right, which governs. Possession is a legal concept. It involves two things: A present or, in the case of constructive possession, a past ability to control the thing possessed plus an intent to exclude others from such control. Or, in the language sometimes used in the cases, to exercise dominion over the object possessed. One may have such an intent in the case of property actually belonging to another, because he intentionally wants to take it away from the owner. But he may also have this intent because he is mistaken as to the facts of legal ownership.' " See also Finck Realty Co. v. Lefler, Mo.Sup., 208 S.W.2d 213; Bell v. Barrett, Mo.Sup., 76 S.W.2d 394; Pioneer Cooperage Co. v. Dillard, 332 Mo. 798, 59 S.W.2d 642; Vogt v. Bergmann, Mo.Sup., 189 S.W. 1166.

Fred F. Wolf, one of the grantors in the deed to the Forses in 1924, witness for defendants, testified that the property, the whole of Lot 13 which he owned in 1924, had a frontage of 150 feet on Oak Street, and that he and his wife, Rose E. Wolf, intended to sell the Forses one-third of the frontage of Lot 13 on that street—"We had 150 feet front and intended to sell one-third of it." When they, the Wolfs, built the stucco house at 446 Oak in 1925, the Wolfs specifically told the contractors to build the house "six feet off (east) of the line." The Wolfs built a (north-south) fence extending back to the railroad right of way in alignment "about six feet" west of the southwest corner of the stucco house. There was an (east-west) iron gate with panel "right next to" and connected with the southwest corner of the house. The gate was put there "so we could get along to the shrubbery we had there along the (west side of the) house." The Wolfs had the front yard graded, and planted hedge on the terrace on the west side of the front yard. The witness examined defendants' Exhibit 2, a photograph, and stated that he had planted the young shrubs shown in the picture which was taken soon after the completion of the stucco house in 1925. The picture also discloses small hedge plants at the top of the terrace a foot or so east of the east side of an unimproved (dirt) driveway appurtenant to the property at 450 Oak.

Rose E. Wolf, wife of Fred F. Wolf and one of the grantors in the deed to the Forses, testified that when she and her husband built the stucco house in 1925 the terrace on the west side of the front yard at 446 Oak "began right at the line which they had terminated (sic) as the 50 foot frontage, where the 50 feet ended." The grade of the terrace began at the (east) line of the dirt driveway. The concrete driveway appurtenant to 450 Oak is "in the same position and the same place" that the dirt driveway was in 1925. The Wolfs took care of the shrubs and hedge. The witness identified photographs of the property at 446 Oak as it now exists, and stated that the hedge, now much larger, is in the same position as when planted by the Wolfs when they owned the property, 446 Oak.

Defendants introduced into evidence Exhibit 8A, "Receipt for Earnest Money," signed by the Wolfs, and by one of the

purchasers, Charles A. Forse, wherein the Wolfs acknowledged the receipt of earnest money for a parcel of improved property in Webster Groves, "and having a front of 50 feet on the east side of Oak Street by a depth of 210 feet. Property known as 450 Oak Street * * *." However, Exhibit 8B, the contract by which the property had been listed by Fred F. Wolf with the Webster Groves Trust Company, as the exclusive agent for a sale, described the property as "House No. 450 Oak St. Size of Lot 50x210." And in various other documents or records the property was described as follows; the list and the plat of the assessor of St. Louis County indicate the western part of Lot 13 standing in the name of Rose L. Walters "has a feet front 50"; the tax ledger of the collector of St. Louis County shows "50x182" on Oak; and an application for a loan signed by plaintiff described her property as "House No. 450 Oak St. * * * Size of Lot 50x——." A general tax receipt for the year 1945, and a special tax receipt contained the description "West part of Lot 13, street number is 450 Oak, feet front 50, feet deep 182."

Charles D. Tucker, defendant, testified that when he bought the property at 446 Oak in 1942, there was a fence in the rear and a gate with panel at the southwest corner of the house. The fence was about six feet west of the house. He testified that he as the owner of the property at 446 Oak has taken care of the shrubs and hedges since he acquired and moved into the property. Once he had had occasion to admonish plaintiff's son, Gene Walters, "don't you never cut any more of those bushes (west of the stucco house)." The witness examined the Joyce survey and stated that if the east line of the property at 450 Oak were as indicated on such survey, the line would be within a foot and a half of the west side of his (stucco) house at 446 Oak, and east of the hedge on the terrace. (The Joyce survey, 281 S.W.2d 843, at page 845, indicates the contended [Joyce] line is one foot, one and three-quarter inches from the northwest [front]

corner of the stucco house, and one foot, seven inches from the southwest [rear] corner thereof.)

Dorothy Peterson, who is in charge of the real estate department of the Webster Groves Trust Company, testified she had "prepared the papers" in the transaction of the sale and conveyance by the Wolfs to the Forses; and had "handled that closing transaction" involved in the sale by the Bushes to plaintiff, Rose L. Walters. She prepared the application for a loan signed by plaintiff and ordered a title company to prepare a certificate of title "on the West 50 feet of Lot 13 * * *." The certificate of title, the deed from the Bushes to plaintiff, and the deed of trust executed by plaintiff described the property in conformity with the description in the deed of the Wolfs to the Forses. The witness said that, in preparing the "Receipt for Earnest Money," Exhibit 8A, the description ("improved property * * * having a front of 50 feet on the east side of Oak Street") was taken from the listing contract, Exhibit 8B, which document, as stated supra, described the property listed as "House No. 450 Oak St. Size of Lot 50x210." When asked why the description in the deed from the Wolfs to the Forses was different from the description in the earnest money contract the witness said, "I do not know. It is just an error, that is all. That is the whole sum and substance of it."

Defendants introduced their Exhibit 1, a plat or survey, executed by the Elbring Surveying Company indicating the surveyor's line demarcating the east line of 450 Oak, considering that tract as if described by "the frontage of 50 feet on Oak Street." The east line of 450 Oak, according to the Elbring plat, is 8.01 feet west of the northwest corner of the defendants' stucco house at 446 Oak, and 8.32 west of the southwest corner thereof. The concrete driveway, eight feet in width, admittedly appurtenant to 450 Oak, does not lie in straight parallel with such a line. The east line of plaintiff's property as shown by the Elbring plat coincides at Oak Street with the east side

of the concrete drive, but the driveway, proceeding southwardly, curves slightly to the eastward so that the east side of the drive is 1.25 feet east of the east line of plaintiff's property, as shown by the Elbring survey, at a point "about midway * * * or opposite the midpoint of the stucco residence." The east side of the driveway lies more or less to the eastward of the Elbring line from a point "ten or fifteen feet north" of defendants' stucco residence to a point "perhaps 25 or 30 feet south" thereof.

Myrtle Tucker, a defendant herein, wife of Charles D. Tucker, testified that when she and her husband "moved in" the property at 446 Oak there was a hedge on the west side of the property; the front yard was terraced on the west side; there were bushes and shrubs two or three feet west of the house and a fence was running back from the rear to the railroad right of way— the fence was about six feet west of the southwest corner of the house; she helped take care of the yard and the bushes; and she and her husband trimmed the hedge on the west side of the property.

Charles W. Bush and his wife, Josephine Bush, were witnesses for plaintiff-respondent. Josephine had purchased the property at 450 Oak from Roy Wilson. She had been familiar with the property when Wilson owned it. There was a space of about five or six feet east of the driveway with only small bushes thereon. There was a fence from the rear of the stucco house to the rear of the lot. In 1940 there was shrubbery right "next to the stucco house." There was a "cut" made in the ground when the driveway was built with terraces in both directions from the driveway. She said the fence back of the (stucco) house was a foot and a half to two feet west of the house. Charles W. Bush testified that the fence to the rear of the stucco house was a foot or two west of it, and there was shrubbery between the stucco house and the driveway. The witnesses had seen Gene Walters, son of plaintiff, "trimming those bushes."

Plaintiff, Rose L. Walters, testified that when she moved into the property at 450 Oak there was a fence which started at the rear of the stucco house at 446 Oak about a foot and a half from the corner thereof; that her husband and son "took care of that shrubbery" on their property including that on the east side of the driveway.

Charles A. Forse, grantee in the deed from the Wolfs in 1924, testified that he had bought and lived in the property at 450 Oak. He said he brought "50 feet on Oak Street." He remembered signing the receipt for earnest money. He said, "The deed came after this and is supposed to be the same as this. * * * I bought 50 feet on Oak Street from the curb. Frontage was usually measured from the curb." He further testified that he "bought the property according to the description in the deed."

J. W. Ward, president of a realty company at Webster Groves, stated that his company handled the rental of 446 Oak for the Wolfs (and for the Western Life Insurance Company, immediate grantor in the conveyance to defendants) from 1931 "up until '42," when the Tuckers acquired the property. The Western Life Insurance Company "took over" and became the owner of 446 Oak, June 1, 1933. As agent, Ward represented to tenants that the property, 446 Oak, extended "approximately 100 feet," with a driveway "on the right side, which would be the West side of 446." The property was shown as "including shrubbery there we had to pay to have trimmed in conjunction with trimming the yard and the trees."

The successive and continuous occupancy of the property at 446 Oak by the Western Life Insurance Company and its grantees, defendants, from June 1, 1933, to the institution of this action, February 27, 1952, extended over a period of approximately nineteen and three-fourth years.

■ Having examined the whole of the two transcripts on appeal, we are of the opinion defendants did not sustain their

burden of proving by clear and convincing evidence that there was a mutual mistake in the description in the deed from the Wolfs to the Forses in 1924 and in subsequent mesne conveyances of the west part of Lot 13.

■ Our statement of the facts discloses variances among the several ancillary and antecedent documents purporting to describe the property at 450 Oak. The receipt for earnest money or so-called earnest money contract indicates a frontage of fifty feet on Oak street was intended. The earnest money contract actually amounted to a contract of purchase and sale, and we suppose that ordinarily the description contained in such antecedent written contract would be considered persuasive evidence of the extent of the property the parties intended to buy and sell. But the witness, the scrivener, testified that she had written the description in the earnest money contract by making reference to the description in the listing contract, which latter instrument, as we have seen, described the property listed by the Wolfs as "50x210" feet in size. The extent of the subsequent occupancy of neither of the parties to the original deed and their respective subsequent grantees has been coextensive with the east boundary line of the property (450 Oak) as the property was described in the original and subsequent deeds, nor has the subsequent occupancy of either of the parties to the original deed and their respective subsequent grantees been coextensive with the east boundary of the property (450 Oak), as indicated by the Elbring survey. The Wolfs unequivocally testified of their intention to sell and convey to the Forses a tract of fifty feet frontage on Oak, but it is obvious their subsequent occupancy did not extend to the east line of a tract measured by a frontage of fifty feet on Oak. The testimony of Charles A. Forse is not clear in tending to establish the amount of ground the Forses were intending to buy in 1924. He said that he had bought fifty feet on Oak Street and that the deed was "supposed to be the same as

the earnest money contract." But he also said he bought the property "according to the description in the deed." We have not lost sight of the rule that mistake, in order to entitle a party to reformation of an instrument must be mutual—common to both parties to the instrument; and that mutual mistake, in order to justify granting the relief of reformation, must be established by clear and convincing evidence.

■ Attending defendants' claim of title by adverse possession—plaintiff-respondent argues that defendants failed to prove they actually had possession of the strip of land, title to which is in dispute; and that defendants failed to prove they have openly claimed title as against plaintiff. However, we have the view that the evidence tends to show a clear demarcation of the *extent* of the possession of defendants and their predecessors of title since 1925, when the Wolfs built the stucco house and set out shrubs to the westward thereof and hedge near the east side of the (then unimproved) driveway; and built a fence in north-south alignment approximately six feet west of the southwest corner of the house. It seems obvious that, although mistaken, the Wolfs believed the boundary line (between their property at 446 Oak and the property at 450 Oak, conveyed to the Forses) to be six feet west of their stucco house. They had directed the contractors to build the house six feet "from the line." As stated, they erected a fence to the rear in alignment approximately six feet west of the house. They planted a hedge on the west side of the front yard on a line which appears to be in north-south alignment approximately six feet west of the west side of the house. It would seem that the Forses and their subsequent grantees, including plaintiff, had tacitly recognized the alignment of the fence and hedge as the "property" line between 446 and 450 Oak. At least they have acquiesced in the occupancy of the successive owners of 446 Oak to the line which was openly and notoriously signified by the alignment of the fence, shrubbery and hedge. Such occupancy on

the part of defendants and their predecessors had not been questioned (until the Joyce survey was executed September 19, 1951). It is true there was some evidence that plaintiff's son, Gene, had cut the shrubs growing along the west side of the stucco house; but there was also evidence that defendants had admonished the son never to cut the shrubs. Although plaintiff testified, as did her witnesses, that the fence to the rear was "a foot and a half to two feet west of the (stucco) house" or "about a foot and a half from the corner" thereof, photographs of the east-west panel and gate, to the westerly side of which the north end of the original fence was attached, corroborate the testimony of the Wolfs that the fence was set in north-south alignment approximately six feet west of the house; and the apparent condition of the gate and panel and apparent growth of the hedge are physical facts corroborative of the testimony of the Wolfs that they built the fence and set out the hedge when or soon after they built the stucco house in 1925. The fence and the hedge and their locations were objective evidence of the extent of the possession of defendants and their predecessors, and such evidence and the testimony of their acts of ownership and dominion over the land so possessed, in our opinion, demonstrate their intention to claim the tract so possessed as their own. Although the extent of their possession and claim, as indicated by the fence and hedge, originated in mistake as to the location of the true boundary line between 446 and 450 Oak, there was no evidence tending to show or to justify the finding that defendants or their predecessors claimed only to the true line irrespective of the fence and hedge. Again consult Agers v. Reynolds, supra, and Finck Realty Co. v. Lefler, supra.

Our examination of the records of the two trials of this case convinces us that defendants should have judgment decreeing in them title by adverse possession to the strip of land in dispute, but only to the extent of an area with west delineation or boundary line six feet west of the south-west corner of defendants' stucco house; that plaintiff should be declared the owner of the portion of the disputed tract lying west of such a line—such delineation and boundary line should be parallel with the west boundary line of Lot 13; and that each of the parties, plaintiff and defendants, should have the protection of an injunctive order protecting the possession, use and enjoyment of the portion of the disputed tract, title to which shall have been decreed in them respectively in accordance with this opinion.

The judgment for plaintiff should be reversed and the cause remanded with directions to enter a judgment and decree in conformity with this opinion. It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.